PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

FILED
2007 JUN -5 P 3: 46
RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

Name KING ALTON A
(Last) (First) (Initial)

Prisoner Number CDM486

Institutional Address 885 N. San Pedro Street
San Jose, CA 95110

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ALTON KING
(Enter the full name of plaintiff in this action.)
Petitioner,

vs.

LAURIE SMITH, Sheriff of Santa Clara County,
Respondent

(Enter the full name of respondent(s) or jailor in this action)

C 07 02936 SI

Case No. ______
(To be provided by the clerk of court)

**PETITION FOR A WRIT OF HABEAS CORPUS**

Read Comments Carefully Before Filling In

When and Where to File

You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

If you are challenging your conviction or sentence and you were not convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your petition will likely be transferred to the district court for the district that includes the institution where you are confined. Habeas L.R. 2254-3(b).

Who to Name as Respondent

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now and the Attorney General of the state in which the judgment you seek to attack was entered.

A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

1. What sentence are you challenging in this petition?

(a) Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland):

Santa Clara County Superior Court, San Jose

Court Location

(b) Case number, if known BB151848

(c) Date and terms of sentence Nov. 07, 2003, 14 yrs 8 mos.

(d) Are you now in custody serving this term? (Custody means being in jail, on parole or probation, etc.) Yes X No ____

Where?

Name of Institution: ____________________

Address: ____________________

2. For what crime were you given this sentence? (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known. If you are challenging more than one sentence, you should file a different petition for each sentence.)

1 count PC 288(a) 8 years

5 counts PC 288(c) 8 months per count, 48 months

2 counts PC 243.6(a) 2 years (1 year per count)

1 count PC 288a(b)(1) 8 months

3. Did you have any of the following?

Arraignment: Yes __X__ No ____

Preliminary Hearing: Yes __X__ No ____

Motion to Suppress: Yes ____ No __X__

4. How did you plead?

Guilty ____ Not Guilty __X__ Nolo Contendere ____

Any other plea (specify) ____________________

5. If you went to trial, what kind of trial did you have?

Jury ____ Judge alone __X__ Judge alone on a transcript ____

6. Did you testify at your trial? Yes ____ No ____

7. Did you have an attorney at the following proceedings:

(a) Arraignment Yes __X__ No ____

(b) Preliminary hearing Yes __X__ No ____

(c) Time of plea Yes __X__ No ____

(d) Trial Yes __X__ No ____

(e) Sentencing Yes __X__ No ____

(f) Appeal Yes __X__ No ____

(g) Other post-conviction proceeding Yes __X__ No ____

8. Did you appeal your conviction? Yes __X__ No ____

(a) If you did, to what court(s) did you appeal?

Court of Appeal Yes __X__ No ____

Year: 2004 Result: Affirmed

Supreme Court of California Yes ____ No ____

Year: 2004 Result: Review Denied

Any other court Yes ____ No ____

Year: ________ Result: ____________________

(b) If you appealed, were the grounds the same as those that you are raising in this

petition? Yes X No____

(c) Was there an opinion? Yes ____ No X

(d) Did you seek permission to file a late appeal under Rule 31(a)?

Yes ____ No X

If you did, give the name of the court and the result:

______________________________________________

______________________________________________

9. Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal? Yes X No____

[Note: If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if that petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition. You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28 U.S.C. §§ 2244(b).]

(a) If you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding. Attach extra paper if you need more space.

I. Name of Court: Court of Appeals 6th District

Type of Proceeding: Habeas Corpus

Grounds raised (Be brief but specific):

a. Violation of 5th and 6th Amendments to U.S.

constitution RE: Blakely v. Washington, 542

U.S. 296 (2004) State Court illegally imposed

aggravated and consecutive terms on petitioner.

Result: Denied Date of Result: ________

II. Name of Court: California Supreme Court

Type of Proceeding: Habeas Corpus

Grounds raised (Be brief but specific):

a. Violation of 5th and 6th Amendments to U.S.

b. constitution RE: Blakely v. Washington, 542

c. U.S. 296 (2004) State Court illegally imposed

d. aggravated and consecutive terms on petitioner.

Result: Denied Date of Result: 08-30-06

III. Name of Court: N/A

Type of Proceeding: ______

Grounds raised (Be brief but specific):

a. ______

b. ______

c. ______

d. ______

Result: ______ Date of Result: ______

IV. Name of Court: N/A

Type of Proceeding: ______

Grounds raised (Be brief but specific):

a. ______

b. ______

c. ______

d. ______

Result: ______ Date of Result: ______

(b) Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes ____ No____

Name and location of court: ______

B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied? What happened? Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

need more space. Answer the same questions for each claim.

[Note: You must present ALL your claims in your first federal habeas petition. Subsequent petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant, 499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

Claim One: The evidence in support of petitioner's State convictions cannot be fairly characterized as sufficient

~~Supporting Facts:~~ to find guilt beyond a reasonable doubt in counts 1, 6, 12 & 15.

Claim Two: The facts supporting petitioner's aggravated 8 year sentence on count 1 were neither admitted by him,

~~Supporting Facts:~~ nor found by the trier of fact at his trial, his sentence on count 1 violates his 6th Amendment right to trial by jury and the same is true for the consecutive sentences imposed on all other counts (3, 4, 5, 6, 10,

~~Claim Three:~~ 19 and 20) by the court. The fifth Amendment is

a also at issue.

Supporting Facts:

If any of these grounds was not previously presented to any other court, state briefly which grounds were not presented and why:

N/A

List, by name and citation only, any cases that you think are close factually to yours so that they are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning of these cases:

Blakely v. Washington, 542 U.S. 296 (2004). Apprendi v. New Jersey, 530 U.S. 466 (2000). Cunningham v. California, 549 U.S. (2007). See, Memorandum - Point and Authorities.

Do you have an attorney for this petition? Yes____ No X

If you do, give the name and address of your attorney:

_______________________________________________

WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

Executed on May 31, 2007
Date

Signature of Petitioner

(Rev. 6/02)

1) **INTRODUCTION AND BACKGROUND**

On November 07, 2002, the State Trial Court Judge returned verdicts against petitioner on one count of a lewd and lascivious act on a child under the age of 14, count one; 6 counts of lewd and lascivious acts on a child of the age of either 14 or 15; 1 count of oral copulation; and, 2 counts of sexual battery (CT 845).

On February 20, 2003, the Trial Court sentenced petitioner to a term of 14 years and 8 months, calculated as follows: 8 years for the conviction for count one; 6 consecutive 8 month terms for lewd acts with a minor 14 or 15 years old; another 8 months consecutive term for oral copulation; and 2 consecutive 1 year terms for the sexual battery convictions (CT 932-933). In choosing the aggravated 8 years term on count one, the court cited to reasons. The court first noted that the offense involved "planning, sophistication and professionalism." (Cal. Rules of Court, Rule 4.421 (A)(8). The court also found that petitioner had taken advantage of a position of trust and confidence. (Cal. Rules of Court, Rule 4.421 (A)(11) ). With respect to the consecutive sentences, the court justified those because of its unilateral determination that the crimes involved separate victims and/or that they occurred on separate occasions (RT 1189-91).

As discussed below, the court's imposition of the aggravated term on count one was unauthorized under Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, 542 U.S. 296 (2000); and U.S. v. Booker, 543 U.S. 220 (2005), and in violation of the Sixth Amendment, because petitioner was entitled to a jury determination of those additional facts exposing him to the possibility of a sentence greater than the maximum allowed by a jury's findings (in California the middle term) by proof beyond a reasonable doubt. Similary, the imposition of consecutive terms based on the "fact" that the incidents were separate or involved separate victims should be deemed unauthorized because no jury found those factors true.

I. Apprendi, Blakely and Booker apply to this case.

Under this triology of cases (Apprendi, Blakely and Booker), in California the middle term is the "statutory maximum"

because the upper term requires additional finging (i.e. "aggravating circumstances") beyond those inherent in the offense itself.

California statutes, court rules and case law make clear that, unless there is a finding of at least one aggravating circumstance, a court cannot impose the upper term: "...The court shall order imposition of the middle term, unless there are circumstances in aggravation..." PC 1170 (b). emphasis added; Cal. Rules of court Rule 4.420 (a)&(b); CF People v. Piceno, 195 C.A. 3d 1353 @ 1360 (1987). As with the "standard range" in Blakely, the mid-term is the presumptive sentence. Similar to the "exceptional sentence in Blakely, a California court lacks statutory authority to impose an upper term unless it finds "aggravating circumstances" beyond the elements of the offense itself. (These elements are addressed, infra.)

Like the Washington statutes, the California Rules provide a list of enumerated circumstances (Cal. Rules of court, Rule 4.421), but the list is "not exclusive" and a court may rely upon a non-enumerated circumstance "reasonably related" to the sentencing decision. (Cal. Rules of court, Rule 4.408(a); compare Blakely, @ P. 411 (listed aggravating factors "illustrative rather than exhaustive"). As with the Washington scheme, the court must make explicit factual findings. (Sec. 1170 (c)); Cal. Rules of court, Rule 4.420 (e), (a concise statement of the ultimate facts deemed to constitute circumstance in aggravation); Blakely @ P. 411 (Washington judge "must set forth findings of facts and conclusions of law supporting" an "exceptional sentence").

Moreover, California's "dual use" Rule underscores the necessity of finding additional facts for a court cannot base an upper term on a fact which is either an element of the underlying offense or is the basis for an enhancement. (Sec. 1170 (b); Cal Rules of court, Rule 4.420 (c)&(d)). Thus, the aggravating circumstances authorizing and upper term are almost necessarily facts beyond those determined by the jury's verdicts and enhancement findings, (unless the court decides to strike an enhancement and instead use the enhancing facts to impose the upper term, see, Cal. Rules of court, Rule 4.420 (c)).

Put another way, where the only aggravating circumstances are those which overlap either the offense or any enhancement, the middle term is the "maximum" sentence a defendant may receive. It is only a finding of some additional non-over-lapping aggravating circumstance which can "expose" a defendant to an upper term. Apprendi @ 494. The judge acquires that authority (to impose an upper term) only upon finding some additional fact". see, Blakely @ 414-15.

Accordingly, under the Sixth Amendment reasoning of the triology (Apprendi, Blakely & Booker) petitioner is entitled to jury determination of any such aggravating circumstance used to impose an upper term and those findings must be subject to a reasonable doubt standard of proof, Blakely @ 418-19, rather than a preponderance standard, as California law currently provides, Cal. Rules of court, Rule 4.420 (b).

Again, in this case the sentencing court used two factors to justify the aggravated term. The court concluded First of all that the crime involved planning, sophistication and professionalism. The court also found that the petitioner had taken advantage of a position of trust and confidence. But neither of these findings were pleaded, defended or found true by the Trier of fact a trial. Instead they were found true by the sentencing court judge.

This case is unlike Blakely, however, in that petitioner did waive his right to a jury with respect to the trial. But when he waived his right to a jury trial, petitioner certainly could not have known that Blakely and Booker would be decided. In order for the waiver of constitutional rights to be effective, the waiver must be knowing and intelligent. People v. Walker, 54 Cal. 3d 1013 @ 1015 (1991). Thus petitioner submits that since he was unaware of his right to have a jury decide aggravating sentencing factors, that his waiver with respect to a jury trial should not be deemed to "carry over" to the sentencing.

Regardless, it is axiomatic here , as said , that the prosecutor did not plead, the petitioner did not have any opportunity to defend, and the trial court did not say that he found at the trial that the offense involved planning, sophistication and professionalism or that petitioner had taken

advantage of position of trust and confidence.

In finding guilt on count one, just exactly what did the prosecutor charge, the petitioner defend and the court find in its conclusion that petitioner was guilty of a violation of PC 288(a) (lewd conduct with a child under 14)? PC 288(a) requires a necessary finding that: Petitioner, (1) lewdly touch a child, (2) under 14 years of age; with, (3) the intent of arousing "sexual desires" of either person. So the trial court here found that petitioner touched Jordon Doe, who was not yet 14 years old for the purpose of sexual arousal of either himself or Jordan, nothing more. Petitioner admitted no facts in the case and he had no prior convictions for consideration by the court, but yet he was sentenced to the "maximum term" because his crime involved planing, sophistication and proffessionalism along with his having taken advantage of a position of trust and confidence. The sentencing court merely waived its magic wand and, <u>wah-lah</u>, these aggravating sentencing factors appeared. Cal. Rules of court, Rule 4.421 (A)(8)&(11).

Penal code 288 specifies a sentencing range of 3 prison term: 3 years for the lower term; 6 years for the middle term; and, 8 years for the maximum term. Of vital importance to the court's decision here is PC 1170 (b) which reads:

> When a judgment of imprisonment is to be imposed and and the statute specified three terms, <u>the court shall order imposition of the middle term</u>, unless there are circumstances in aggravation of mitigation of the crime (Emphasis added).

> This mandatory requirement is re-iterated in Cal. Rules of court, Rule 4.420 (b): Selection of the upper term is justified <u>only if</u>, after consideration of all the relevant facts, the circumstances in aggravation, outweigh the circumstances in mitigation. (Emphasis mine).

<u>Ergo</u>, the sentencing court in this case could not impose the 8 year term on count one unless it found the above cited aggravating factors beyond a reasonable doubt. <u>But see</u>, Cal. Rules of court, Rule 4.420 (b). Read together California

law authorizes only the imposition of the "middle term" as a result of a trial verdict of guilty. The "upper term" may never be applied without the finding of aggravating circumstances by the sentencing court. The maximum sentence petitioner should have received is 6 years, "the middle term".

The California Supreme Court however, has concluded by taking one partial sentence from the court's decision in Apprendi totally out of context, that the 8 year upper term is the maximum sentence in California, not the 6 year middle term the legislature mandates in section 1170 (b), People v. Black, 35 Cal 4th 1238 (2005). In Black the California high court said:

> The mandatory language of section 1170 subdivision (b) does provide some support for defendant's position. But the high court has emphasized in analyzing the Sixth Amendment right to a jury trial, "the relevant inquiry is one not of form, but of effect" (Apprendi, supra, 530 U.S. @ P 494). id. @ 1254.

First, the issue at this point in the Black's case was not cleared whether someone has a Sixth Amendent.

1/ It is interesting to note here that the court in Black framed its issue to be answered in almost the same language as the dissents in Apprendi and Booker, Black, supra @ 1254 n8. Right to a jury trial, but rather, which term of imprisonment is the "maximum" term allowed by California's determinate sentencing scheme without judicial fact finding, the lower, the middle, or the upper term.

Immediately, after the phrase alluded to above cited by the Black court from Apprendi the Federal Court posed the following question (which plainly had nothing to do with the issue then being discussed by the Black court):

> Does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict; Apprendi @ 494.

Obviously the court was not talking about any Sixth Amendment right to trial. It was talking about the "elusive distinction between 'elements' and statutory factors." id @ 4949. Like here, the aggravating factors which appeared out of thin air at petitioner's sentencing hearing that ultimately resulted in the increase of his "maximum sentence" from 6 years to 8 years. The jury trial requirement only comes into play after it has been clearly established what exactly is the maximum term, and in California, the maximum term is the middle term because "the court shall order imposition of the middle term." (P.C. 1170 (b) ). This is mandatory language, People v. Piceno, supra, and its " this legal right to a lesser sentence," that "makes all the difference," Blakely @ 309, thus the "effect" overrules the "form."

In Blakely the Supreme Court explained just exactly what it meant by the term "statutory maximum" and concluded it is:

> The maximum sentence a judge may impose solely on the basis of the facts reflected in the jury's verdict or admitted by the defendant. id. 542 U.S. @ 303.

In California "the court shall order imposition of the middle term."

> In other words the relevant " statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. id. @ 313.

The California Supreme Court's conclusions in Black that the upper term is in all cases the maximum sentence is "contrary to" and an "objectively unreasonable" application of clearly established United States Supreme Court precidence.

The decision in Black is "contrary to" the las of Apprendi that;

> Any fact (other than prior convictions) that increases the maximum penalty for a crime must be charged in a indictment, submitted to a jury, and proven beyond a reasonable doubt. 530 U.S. @ 476.

The California Supreme Court's opinion in Black is "contrary to" the law of Blakely that:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. id. @ 301.

The California Supreme Court's opinion in Black is "contrary to" the law of Booker that held:

> That the Sixth Amendment requires a jury, not a judge to find sentencing facts-facts about the way in which an offender committed the crime-where those facts would move an offender from lower to higher guideline ranges. Booker, @ 326, (Breyer dissenting).

The rules from Apprendi, Blakely and Booker should also govern the imposition of consecutive sentences. In California, under PC 669, it is the sentencing judge's duty to order whether particular prison sentences should be served consecutively or concurrently. However, if the court fails to so specify, the sentences must be served concurrently. Here, the sentencing court imposed consecutive terms because of its determination that the crimes involved separate victims and/or that they occurred on spearate occasions. Under Blakely and Booker, these are factors that, unless admitted, should be tried.

The Blakely court did briefly address the waiver issue, it stated:

> If appropriate waivers are procured,, States may continue to offer judicial fact finding as a matter

> of course to all defendants who plead guilty. Even a defendant who stands trial may consent to judicial fact finding as to sentence enhancements. id @ 310.

Petitioner maintains however, that any waiver of a constitutional right must be a "knowing waiver" and there is nothing in the record of this case that would support the finding that petitioner either stipulated to, or consented to the judicial fact finding of aggravating sentencing factors that were used at his sentencing hearing because there was no informal waiver.

In People v. Cleveland, 87 C.A. 4th 263 (2001). The appellate court held that "the Rule of Apprendi... only applies where the non jury factual determination increases the maximum penalty beyond the statutory range authorized by the jury's verdict." id @ 270. One has to question this rationale in light of Blakely and Booker.

Justice Johnson issued a strong dissent in Cleveland, arguing that Apprendi should require that a jury determine whether sentences should be served consecutively or concurrently, id, @ 272-282. The fundamental tone of his dissent seems to presage the Supreme Court's view in Blakely.

> Both the New Jersey 'hate crime' law and California's 'consecutive sentencing' law dramatically increase a defendants penalty based on a trial court's finding about his state of mind at the time he committed the criminal acts of which the jury convicted him. It would elevate 'form over effect' to hold it is unconstitutional for a judge rather than a jury to decide whether a New Jersey defendant was motivated by hate when he committed his criminal acts, yet it is constitutional for a judge to decide whether a California defendant entertained multiple rather than a single objective when committing his criminal acts. In both instances the required finding exposes the defendant to a greater punishment than that

> authorized by the jury's guilty verdict. The jury only found appellant guilty of the two offenses. It was the judge who made the 'required finding' that allowed appellant to received the greater punishment of a nearly double sentence, the finding appellant harbored multiple criminal objectives during this single course of criminal conduct. Accordingly, in my view, the Supreme Court's holding in Apprendi renders unconstitutional the consecutive sentencing of appellant in this case. Cleveland @ 274.

On January 22, 2007, the United States Supreme Court issued its opinion in Cunningham v. California, ____U.S.___ , WL135687 (2007), voiding the California Supreme Court's holding in People v. Black, 35 Cal. 4th 1238 (2005). The high court decided that California's Determinate Sentencing Law allocates sole authority to the judge to find facts permitting the imposition of an upper term sentence in violation of the Sixth Amendment. Thus it was held, that this violated the Rule established in Apprendi v. New Jersey, supra, and does not survive Sixth Amendment inspection despite what the State Supreme Court held in People v. Black.

Petitioner respectfully asserts, that Cunningham's logic must also extend to consecutive sentencing in California. California Rules of Court require judge made findings of facts to justify running sentences consecutively, see, Cal. rules of court, Rule 4.406 (b)(5) and Rule, 4.425. (see also, Cal. Rules of Court, Rule 4.420 (b) ), (judges factual findings are by only preponderence of evidence standard.) Penal code sec. 654 bars multiple sentences pursuant to a single course of conduct, with some exceptions. People v. Latimer, 5 Cal. 4th 1203 (1993). The determination of whether P.C. 654 applies is a fact not found by a jury. Finally, there are some sections mandating consecutive terms based on facts not found by a jury, see e.g. P.C. 667, subd. (C)(6),(7) (where the determination of whether multiple current felonies are committed on the same

occasion and arising from the same set of operating facts is made by a judge, not a jury). In this petitioner's case the judge concluded on his own, the same. Contra, People v. Clifton, 750 N.E. 2d 686 (2000).

Each of these facts is a fact which increased petitioner's sentence but was not found by a jury under Cunningham and Apprendi, these facts must be pleaded and proved to a jury beyond a reasonable doubt, or it cannot be relied upon to impose a consecutive sentence.

II. The issue of insufficient evidence on count one.

Count one is challenged for insufficiency of the evidence as it relates to the second element of the crime of P.C. 288(a), that being the age of the alleged victim, i.e. "under the age of 14 years." This count was alleged to have occurred with Jordan Doe, D.O.B July 18, 1985.

A. The allege victim Jordan, first testified that this incident "probably" happened in 1999, but under further questioning and rehabilitation by the prosecution, he stated that he was comfortable" in saying that it occurred between January 01, 1999, and June 01, 1999. (RT 538).

B. On cross-examination however, Jordan admitted he had told the police when he originally reported the incidents, that all molestations of him occurred within 6 or 7 months of each other, and that the last incident occurred in November of 2000. (RT 569). If this testimony was true, none of the incidents could have occurred in 1999. Jordan turned 14 on July 18, 1999.

C. Jordan's police report said that he remembered the date in count one because he spent the night at petitioner's home with his son Justin and went to sing the next day with the high school chior, The Royalaires, (RT 546,576). this fact was also recorded by the police reports made at the time Jordan reported the incidents to them. (RT 579).

D. But, Jordan didn't join the Royalaires chior until he attended high school at Mountain View Academy in August of 1999, and he had already turned 14 years old on July 18, 1999. (RT 526,546)

**E.** However, when Jordan testified he corrected his memory as reflected in the police report and said that the incident did not occur before a Royalaries Chior Concert. (RT 546-47,579).

**F.** On cross-examination when defense counsel asked Jordan if he had ever spent the night at petitioner's home prior to attending high school, Jordan replied, "I think I may have, but I am not sure." (RT 573).

**G.** Petitioner presented 3 defense witnesses, his twin son and daughter, Justin and Jessica, and his wife Toni. All 3 witnesses testified that Jordan had never been to their home before his freshman year in high school which started in August, 1999. (RT 918,987,1058-59).

**H.** They testified that Jordan only spent the night at their home a couple of times and that was because there was a Royalaire's concert the following day. (RT 918-19, 987, 1063 to 1066). Petitioner's wife remembered that Jordan's mother called her at home to see if he could spend the night because of the Royalaire's concert the next day, and that she picked Jordan up from school the preceding day. (RT 1063-64).

**I.** On rebuttal, Jordan testified that he spent the night at petitioner's home, he remembered, once before starting high school, (RT 1113).

**J.** Jordan's mother also testified on rebuttal that he had spent the night at petitioner's home 3 or 4 times before he attended high school. However, this testimony was impeached when she admitted that when she talked to the police, she only talked about Jordan having spent the night in conjunction with Royalaire's concerts. She attempted to explain away this equivocation by saying that was the way the police officer had framed the question. (RT 1114-15).

Ergo, because in his initial encounters with police, Jordan stated that all of the offenses had been committed after he had reached the age of 14, (RT 569); Because Jordan admitted on the witness stand that he was "not sure" whether he had spent the night at petitioner's home prior to his 14th birthday, (RT 573); because he also admitted on the stand that he "always had trouble with dates." (RT 1143); and because all 3 defense

witnesses testified that the incident alleged in count one could not have occurred before Jordan's 14th birthday, (RT 914 to 1064); and most importantly, because the trier of facts concluded that petitioner's 3 family members were the most credible of all the witnesses at trial, (RT 1160-61); and finally, because proof of the fact **(Jordan's age)**, had to be beyond a reasonable doubt, petitioner's conviction on count one cannot stand.

> Under In re Winship [397 U.S. 358 (1990)] a federal habeas corpus court must consider not whether there was sufficient evidence to justify a rational trier of the facts to find guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 @ 312-13 (1979); see also: id. @ 324 (federal habeas relief is available for lack of evidence).

In Jackson, the court rescinded its " no evidence" rule [of Thompson v. Louisville, 362 U.S. 199 (1960)] as "simply inadequate to protect against misapplications of the constitutional standard of reasonable doubt." (Jackson @ 320 ) because "[a] mere modicum of evidence may satisfy a 'no evidence' standard." id. @ 320.

Petitioner respectfully submits that as related above, the evidence supporting **Jordan's age** as being under 14 years was equivocal and was not even equally balanced with the evidence supplied refuting the under the age of 14 years testimony; and indeed, because the facts finder found that petitioner's **witnesses were the most credible of all the witnesses at trial.** (RT 1160, 1161).

In In Re Winship, the court citing to Davis v. United States, 160 U.S. 469 (1895), pointed out that during the Davis trial the trial judge instructed the jury that they should convict if they found the evidence to be "equally balanced." In reversing this conviction the Supreme Court found that Davis was entitled to a reversal because the evidence that he might be insane and the evidence that he might not be insane would not sustain the conviction beyond a reasonable doubt. Winship, @ 363.

A Federal Court reviewing a state court conviction confronted with a record that supports conflicting inferences, does not have an easy task. A trier of facts credibility determinations are entitled to a near-total deference. Bruce v. Terhune, 376 F. 3d 950 @ 975 (9th Cir. 2004). Except in the most exceptional of circumstances, Jackson does not permit a federal habeas court to revisit credibility determinations. Jackson, @ 443 U.S. 326; People of Territory of Guam v. Mcgravey, 14 F.3d 1344 @ 1346-47 (9th Cir. 1994).

Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction, United States v. Lewis, 787 F.2d 1318 @ 1323 (9th Cir. 1986), but in a case as that before the court, "mere suspicion or speculation (built on equivocal testimony by state's witnesses) cannot be the basis for creation of logical inferences." id. @ 1323. see also, Walters v. Maass, 45 F.3d 1355 @ 1358 (9th Cir. 1995). Especially when the credibility factor has been decided against the state by the trier of facts.

The California courts, both appellate and supreme courts, wrote no opinions as to the legal claims visited in this petition. This court will be deciding and writing on a clean slate. Because of the credibility determinations already made by the state trial court here, that petitioner's witnesses **were the most credible of all the witnesses**, this court should decide that there was an insufficient amount of evidence produced by the state for any rational trier of facts to find the essential element of the crime that alleged victim Jordan Doe was under the age of 14 years at the time of the crime beyond a reasonable doubt. see, Payne v. Borg, 982 F.2d 335 @ 338 (9th Cir. 1992).

III. Count six should also be reversed because there was no evidence to show that petitioner intended to either arouse or appeal to, or gratify either his or the alleged victims " sexual desires" as required by California Penal Code 288(c).

Count six involved a 15 year old boy, Chris Doe, who alleged that while he was playing basketball he developed a severe stomach cramp just above the waistline. Because Chris

thought that petitioner was a doctor, he asked him to check him out. Petitioner agreed and they went into the bathroom. (RT 305-06). Once in the bathroom Chris showed petitioner where the pain was (RT 307) and he began to probe on Chris' stomach area "just like a doctor would." (RT 308). Petitioner reassured Chris that he shouldn't worry and this reassurance made him feel better (RT 310). Chris then pulled out the waistband of his shorts and underwear and petitioner placed his hand under his scrotum and asked him to cough. (RT 310). Petitioner left his hand there for only a few seconds (RT 311, 336). When petitioner pulled his hand back out, it "probably brushed against" Chris' penis. (RT 311). Chris thought nothing of this incident until other teenagers reported petitioner had touched them inappropriately. (RT 312-13).

There is currently a serious historical constitutional enigma as to what constitutes the elements of the crime of lewd or lascivious acts, Penal Code 288, in California. Historically, the statute proscribes only "lewd or lascivious acts willfully and lewdly committed upon or with the body or any member thereof, of a child [14 or 15 years of age] with the intent of arousing or gratifying the lust or sexual desires of either party." This statute is more than 100 years old. People v. Dabner, 25 C.A. 630 @ 632 (1914); see also, People v. Camp, 42 C.A. 411 @ 417 (1919), (the purpose of section 288 is to protect children from "conduct so abnormal or diabolical [as] to corrupt the morals of children."); People v. Love, 29 C.A. 521 @ 523 (1916), ("the section under which appellant was prosecuted (P.C. 288) makes punishable acts of a lascivious nature..."); People v. Membro, 38 Cal. 3d 658 @ 697 (1985), ("the elements of a section 288 offense are: (1) a lewd or lascivious act, that is an act that is lustful, immoral, seductive, or degrading; (2) the commission of such act upon the body, or any part thereof, of a child under 14 years of age; (3) [commission of the act] with the intent of arousing, appealing to the lust or sexual desires of the accused or the child. People v. Webb, 158 C.A. 2d 537 @ 542 (1958) )."

Judge Alsup of the Northern District of California Federal Court has concluded that: "section 288 requires the conjunction of a specific type of act and well-defined mental state." Shumate v. Newland, 75 F. Supp 2d 1076 @ 1085 (N.D. Cal. 1997). Three California Supreme Court decisions have determined that the word "lewd implies a sexual act", Pryor v. Man. CT. of L.A., 25 Cal. 3d 238 @ 247 (1979); accord, People v. Sup. CT (Caswell), 46 Cal. 3d 381 (1988) (lewd, lascivious or any unlawful act a sexual act); and In Re Smith, 7 Cal. 3d 362 @ 365-66 (1972) (Lewdly connotes a "sexual purpose.") (Emphasis supplied to all).

However, in the 1980's this began to change and with the public and political mania surrounding child molestation allegations, California courts began allowing convictions without any child touching by the defendant at all, see, People v. Mickk, 54 Cal. 3d 140 @ 176 (1991) ("no touching of the child [by defendant] is required", "constructive disrobing" is enough to convict). This case involves the element of intent, the specious reasoning of the court of appeals in People v. Pitts, 273 Cal. Rpt. 757 (1990), is most instructive as to how far the courts have reached to gather the inference of any sexual intent in california.

In Pitts the numerous defendants had been convicted of committing 128 counts of violating P.C. 288(a) upon their own and other's children, and were sentenced to hundreds of years in prison. But the convictions were all reversed and dismissed because of prosecutorial misconduct. By 1994, everyone of the child witnesses involved had recanted and claimed their testimony had been coerced. Pitts v. County of Kern, 17 Cal. 4th 340 @ 346 (1998).

Of import here as to the intent issue raised, during the Pitts trial, the state alleged that forcing the children to drink urine was a lewd or lascivious act. During this urine drinking. The defendants did not "touch" the victims, therefore there was no lewd act committed upon the body of them. On appeal the state argued and the court found, "that a touching occurred because the bodily fluid of a coconspirator touched the lips, moutns, and digestive systems of the victims." Pitts 273 Cal.

Rpt. @ 889 (Emphasis added). If this is true, then where did the inference derive from that anyone's lust, or sexual desires had been aroused by such a nefarious act?

How ludicrous must it become in California before the federal courts, the guardians of the Bill of Rights and the United States Constitution, step in and declare this insanity unconstitutional. 1/

Petitioner submits that there is no evidence in this case from which inference of any lewd intent flows. No intent of anyone's sexual arousal may be inferred from the placing of petitioner's hand beneath and upon the scrotum of the teenager who asked him to check him out medically. (RT 305) If such an inference may be made, then evertime a physician performs a physical examination upon a male patient, he commits a lewd or lascivious act.

There was no evidence of any sexual arousal of either party by this act. The teenager did not testified to that.

2/ This court need only compare the " seizing or grabbing" of the 12 year old girl the defendant had been having sex with that indicated no lewd intent in, People v. Jones, 225 C.A. 2d 598 @ 608 (1964) with People v. Martinez, 11 Cal. 4th 439 @ 452-53 (1995), where the seizure or grabbing of two 13 year old girls with no prior sexual connection to the defendant, was found to exhibit adequate lewd sexual intent to convict. This comparison verifies the historical difference between now and back then. see more, P. 31 infra. have an erection, nor noticably start to become erect. Petitioner did not exhibit his privates, or stimulate them, nor have an erection or become erect, start breathing hard, nor was there any other indication that would constitute evidence of the arousal of either party's "sexual desires." This contact was extremely breif. Not even an attempt to commit a lewd or lascivious act can be inferred from such evidence. see, In Re Paul C., 221 C.A. 3d 43 @ 54 (1990) ("Darren's testimony that paul had an erection is substantial evidence of paul's lewd or lascivious intent").

The case of United State v. Plenty Arrows, 946 F. 2d 62 (8th Cir. 1991), is on point. Plenty Arrows was an Ogalaia Sioux native living with his common law wife and her 9 year old son. This 9 year old boy initially revealed the sexual abuse to a child protection worker. He said that Plenty Arrows had touched him in a way he did not like and it was done while his pants were down. He touched him "from the back of his behind" and he had done the touching "with his private part." id. @ 64. As a result of this Plenty Arrows was found guilty of aggravated sexual abuse and sentenced to 210 months in prison.

On appeal Plenty Arrows challenged the sufficiency of the evidence to establish a violation of the aggravated sexual abuse statute. id. @ 64. In reviewing the evidence the appellate court gegan by outlining the elements of the crime and determined that in this case it required proof of contact between the anus and the penis' contact occurs "upon penetration however, (sic) slight." Plenty Arrows pointed out that although there was testimony that his penis had touched the boy's "behind" there was no evidence that his penis had touched the boy's anus, and further, no evidence of any slight penetration. The government argued that you could infer from the victims statements that penetration had occurred. The court said:

> Although the government is entitled to all reasonable inferences supporting the verdict, we cannot sustain a conviction based on mere suspicion or probablity of guilt. United State v. Robinson, 782 F. 2d 128 @ 129 (8th Cir. 1986). id. 65.

Next Plenty Arrows had to argue the evidence was also insufficient to sustain a conviction for "attempted" aggravated sexual abuse. He argued that "the act of placing a penis against the back or buttocks" of the child victim was not a "substantial step" toward consumation of the crime of anal sodomy. The government argued that the testimony at least established attempted anal sodomy and that Plenty Arrows offered no proof of innocent purpose or abandonment of his attempt, id. @ 66. This petitioner asserts that not even an attempt to commit lewd or lascivious acts upon Chris was proven at his trial.

After carefully listing the elements of an attempt to engage in a crime, the Plenty Arrow's court concluded:

> Again the evidence presented is simply in sufficient. There is no indication in the testimony that the placing of the penis against the back of [the victim's] behind constituted a substantial step toward the completion of the crime of anal sodomy. The chief purpose of the "substantial step" requirement is to corroborate the actor's specific intent to commit the crime. (citation), thus, the act must be of such an "unequivocal nature" that it is "calculated to bring the desired result to fruition." id. The problem here is that one cannot determine the actor's ultimate intent from the testimony. id. @ 66. (Emphasis added),

and the court also refused to find guilt of an attempt.

The same problem exists with the evidence in this case. There is no testimony to establish petitioner's ultimate intent, e.g. no "arousal" of either party's "sexual desires", or even an attempt to arouse them.

> To constitute a substantial step toward the commission of a crime, the defendant's conduct must (1) advance the criminal purpose charged, and (2) provide some verification of that purpose. Walters v. Maass, 45 F. 3d @ 1358-59.

See, Fn 1/, supra; see also, People v. Mansell, 227 C.A. 2d 842 (1964) (placing your "hand at or near the area of suspicion" while holding little girls on one's Knees, is not sufficient to raise the inference of a lewd intent, @ 847-848; Accord, People v. Webb, 158 C.A. 2d 537 (1958) (defendant's placing of his arm around the shoulders of an 11½ year old boy just prior to orally copulating with him is not a lewd or lascivious act, nor is placing the hands on the boy just prior to facing the oral copulation, @ 542).

> The question of whether a defendant has been convicted upon inadequate evidence is central to the basic question of guilt or innocence. The

> constitutional necessity of proof beyond a reasonable doubt is not confined to those defendants who are morally blameless. E.g., Mullaney v. Wilbur, 421 U.S. @ 697-698 (requirement of proof beyond a reasonable doubt, is not "limited to those facts which, that if not proved would wholly exonerate" the accused.) Under our system of criminal justice even a theif is entitled to complain that he has been unconstitutionally convicted and imprisoned as a burglar. Jackson, supra @ 323-24.

**IV.** The issue of insufficient evidence on counts 12 and 15.

Petitioner was convicted of 2 counts of sexual battery, P.C. 243.4(a). These counts, 12 and 15 allegedly involved Steven Doe. Apparently, one day when Steven was at petitioner's home, he asked Steven to show him his genitils. At first, Steven refused this request but ultimately acquiesced to this suggestion The two parties then entered a bathroom where Steven testified he allowed petitioner to attempt to masturbate him (RT 183-84). Steven was uncomfortable with this so he asked petitioner to allow him to accomplish his organism by himself and there upon continued his masturbation until ejaculation was done. Once Steven had attained his organism, he called petitioner back into the bathroom to show him his ejaculation. (RT 186). This act resulted in the charge of, and conviction for count 12.

The incident asserted for count 15 allegedly occurred in petitioner's living room when he asked Steven, playfully, to show him his penis. (RT 894-896), and soon after, they began wrestling in fun on the floor, whereupon petitioner attempted to put his hand down Steven's pants. At some point in time, petitioner's hand might have touched the skin of Steven's penis (RT 192-93, 239-40), only "a little bit." (RT 192).

Steven was born on December 25, 1982. He was almost 20 years old when this complaint was filed. He was 17 years, 11 months, plus years of age at the time of these alleged offense (RT 161-163).

This specious prosecutorial abuse of the criminal justice system in California should not be condoned by this Federal Court. The precious resources of the state's criminal justice system certainly have higher priority needs. Indeed, in virtually no other state would like conduct even be **considered** to be a criminal offense. But alas, one more prisoner is crammed into a clearly unconstitutional prison system whose current unconstitutional medical system is of necessity being operated by the California Federal Court.

In California to commit the crime of sexual battery, P.C. 243.4(a), a defendant must, (1) touch an intimate part of another person while that person is unlawfully restrained by the accused, People v. Elam, 91 C.A. 4th 298 (2001). The touching must be against the will of the person, and be committed for the purpose of sexual arousal, sexual gratification, or sexual abuse. id @ 310. To be found guilty, the defendant must have touched the skin of a sexual organ, anus, groin, buttocks, or breast while that person was, or is, unlawfully restrained. id. This penal code was enacted to "provide appropriate punishment for sexually abusive conduct... [that is] physically traumatic and psychologically terrifying" to the alleged victim. People v. Dixon, 75 C.A. 4th 935 @ 944 (1999).

Aside from it being questionable whether or not petitioner touched Steven on the bare skin of an intimate part in at least one instance (count 15), it is abundantly clear that Steven was not "unlawfully restrained" at any time by petitioner. In one instance Steven voluntarily arrived at and entered petitioner's home allegedly to discuss his personal problems and then to spend the evening with his children. (RT 163-64, 215-16, 226, & 216-19). All of this testimony from steven about spending the night in question was hotly contested by petitioner's three defense witnesses whom the judge deemed to be **the most credible witnesses** that testified at this trial. (RT 1160-1161).

Steven testified about count 12 that he had asked petitioner to stop masturbating him, which he did; he stated he felt uncomfortable with petitioner doing this to him (RT 183-185). When petitioner stopped, he exited the bathroom so

Steven could proceed to masturbate himself to ejaculation and thereafter call petitioner back into the room (RT 186). Just a few obvious questions will dispose of the unlawful restraint requirement in this matter. Did petitioner ask Steven to come to his home? No! Did petitioner force Steven into the bathroom? No! Did petitioner force Steven to remain in the bathroom masturbating himself? No! Did petitioner leave the room when requested to do so by Steven? Yes! Did Steven invite petitioner back into the bathroom to show off his ejaculate? Yes! (RT 186).

The fact that Steven masturbated himself to organism in petitioner's bathroom is not a criminal sexual battery by petitioner on Steven, and the fact that petitioner's hand may have, or might have touched Steven's penis while they were play-wrestling, is also not a sexual battery by petitioner upon Steven. (RT 186, 192-193, 239-40).

> At least the term "unlawfully restrained" in section 243.4 means that something more is required than the mere exertion of physical effort necessary to commit the prohibited sexual act... <u>The non-sexual physical element of the statute require(s) that the offender compels the other person to submit by placing the person in fear</u>. <u>People v. Pahl</u>, 236 C.A. 3d 1651 @ 1661 (1991) (Emphasis mine).

There just simply were no sexual batteries committed upon Steven by petitioner in this case. Ironically, the prosecution was allowed to present EC 1108 evidence at this trial which allegedly had occurred <u>after</u> Steven's 18th birthday (RT 195-97), and that had no relevance at all to the charged crime. 3/ Petitioner's conduct, however distastefully did not in any way "physically traumatize or psychologically terrify" any alleged victim in this matter. Moreover, Steven continued to meet with petitioner after he became of legal age and if there were any criminal conduct prior thereto, Steven was an accomplice with it and his testimony had to be corroborated, which it was not. See, P.C. 1111; <u>People v. Williams</u>, 12 C.A. 2d 207 (1936).

Petitioner adopts hereat the arguments contained at sections II and III here in above as though contained verbatim

at this spot.

Therefore, for all of the reasons articulated in this Memorandum, this court should issue its writ ordering the State of California to release petitioner from its custody forthwith.

3/ The fundamental fairness doctrine of the Due Process Clause should have resulted in the exclusion of this type of propensity evidence from being used at this trial. See eg, Glanzer v. Glanzer, 232 F 3d 1258 (9th Cir. 2000).

**DATE:** May 31, 2007

**Respectfully submitted,**

**ALTON A KING**
**Petitioner**