EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
PEGGY S. RUFFRA
Supervising Deputy Attorney General
ROSS C. MOODY, State Bar No. 142541
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-1376
 Fax:  (415) 703-1234
 Email:  Ross.Moody@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **ALTON KING,** | C 07-2936 SI (PR) |
| Petitioner, | |
| **v.** | |
| **DERRAL ADAMS, Warden,** | |
| Respondent. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION                                                                    1

STATEMENT OF THE CASE                                                           2

STATEMENT OF FACTS                                                              2

STANDARD OF REVIEW                                                              4

ARGUMENT                                                                        6

    I.    **THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE CONVICTIONS ON COUNTS 1, 6, 12 AND 15**                6

        A.   Applicable Principles                                6

        B.   State Court's Findings                               6

        C.   Petitioner's Claim Fails                             10

    II.   **PETITIONER'S SENTENCE DID NOT VIOLATE THE SIXTH AMENDMENT**                10

CONCLUSION                                                                      12

1

# TABLE OF AUTHORITIES

2                                                                            **Page**

3  **Cases**

4
5  *Apprendi v. New Jersey*
   530 U.S. 466 (2000)                                                          11

6  *Bell v. Cone*
   535 U.S. 685 (2002)                                                           5
7
   *Blakely v. Washington*
8  542 U.S. 296 (2004)                                                          11

9  *Brecht v. Abrahamson*
   507 U.S. 619 (1993)                                                          11
10
   *Brown v. Payton*
11 544 U.S. 133 (2005)                                                           5

12 *Bruce v. Terhune*
   376 F.3d 950 (9th Cir. 2004)                                                 10
13
   *Clark v. Murphy*
14 331 F.3d 1062 (9th Cir. 2003)                                                 5

15 *Early v. Packer*
   537 U.S. 3 (2002)                                                             5
16
   *Fry v. Pliler*
17 ___ U.S. ___
   127 S.Ct. 2321 (2007)                                                        11
18
   *Gill v. Ayers*
19 342 F.3d 911 (9th Cir. 2003)                                                  5

20 *Himes v. Thompson*
   336 F.3d 848 (9th Cir. 2003)                                                  6
21
   *Jackson v. Virginia*
22 443 U.S. 307 (1979)                                                           6

23 *Juan H. v. Allen*
   408 F.3d 1262 (9th Cir. 2005)                                                 6
24
   *Lockyer v. Andrade*
25 538 U.S. 63c (2003)                                                           5

26 *Medina v. Hornung*
   386 F.3d 872 (9th Cir. 2004)                                                  5
27
   *Ortiz-Sandoval v. Clarke*
28 323 F.3d 1165 (9th Cir. 2003)                                                 5

**TABLE OF AUTHORITIES  (continued)**

Page

*Price v. Vincent*
538 U.S. 634 (2003)                                                                 5

*Rumsfeld v. Padilla*
542 U.S. 426 (2004)                                                                 1

*United States v. Milam*
443 F.3d 382 (4th Cir. 2006)                                                        11

*Washington v. Recuenco*
___ U.S. ___
126 S. Ct. 2546 (2006)                                                              11

*Williams v. Taylor*
529 U.S. 362 (2000)                                                                4, 5

*Woodford v. Visciotti*
537 U.S. 19 (2002)                                                                  5


**Constitutional Provisions**


United States Constitution
        Sixth Amendment


**Statutes**


Antiterrorism and Effective Death Penalty Act of 1996                              4-6

United States Code, Title 28
        § 2242                                                                      1
        § 2254(d)(1)                                                               5

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  ROSS C. MOODY, State Bar No. 142541
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-1376
    Fax:  (415) 703-1234
8   Email:  Ross.Moody@doj.ca.gov

9  Attorneys for Respondent

10            IN THE UNITED STATES DISTRICT COURT

11         FOR THE NORTHERN DISTRICT OF CALIFORNIA

12              SAN FRANCISCO DIVISION

13
   ALTON KING,                                    C 07-2936 SI (PR)
14
                                    Petitioner,   **MEMORANDUM OF POINTS**
15                                                **AND AUTHORITIES IN**
            v.                                    **SUPPORT OF ANSWER TO**
16                                                **PETITION FOR WRIT OF**
   DERRAL ADAMS, Warden,                          **HABEAS CORPUS**
17
                                    Respondent.
18

19

20                          **INTRODUCTION**

21         Following a bench trial, Alton King ("petitioner"), who was the assistant basketball coach

22  at Mountain View Academy, was convicted of 8 counts of child molestation and sentenced to 14

23  years and 8 months in prison.[1]  He now complains that his constitutional rights were violated by the

24  _____

25      1.  Petitioner erroneously named Laurie Smith, the Sheriff of Santa Clara County, as the
   respondent.  Petitioner is presently incarcerated at the California Substance Abuse Treatment
26  Facility at California State Prison at Corcoran.  He is required to name "the person who has custody
   over him," 28 U.S.C. § 2242, which should be the person with "immediate custody" over the
27  detainee. *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). We hereby request that the court substitute
   Derral Adams, Warden, as respondent in this case.  28 U.S.C. § 2242.
28

state in connection with his conviction. Specifically, he maintains that (1) there was insufficient evidence to support the convictions for Counts 1, 6, 12 and 15; and (2) his 8-year upper term sentence on Count 1 plus his consecutive sentences on counts 3, 4, 5, 6, 10, 19 and 20 violated his Sixth Amendment right to a jury trial. Petitioner's claims fail.

## STATEMENT OF THE CASE

Petitioner was charged with 21 acts of child molestation involving nine victims. He waived his right to a jury trial, and his case was tried before a judge. RT 3. At the conclusion of the prosecution case, the trial court dismissed 8 counts for insufficient proof. At the conclusion of the defense case, the trial court found petitioner guilty of the charges in Counts 3, 4, 5, 6, 10, 12, 15, 19, and 20, it dismissed the charge in count 13, and it found petitioner not guilty of the charges contained in counts 8 and 9. CT 845.

On February 20, 2003, the trial court imposed a total prison term of 14 years and 8 months. It imposed an 8 year term on count 1, consecutive 8 month terms on counts 3, 4, 5, 6, 10, 19, and 20, and consecutive 1 year terms on counts 12 and 15. CT 932-33.

Petitioner's conviction and sentence were affirmed by the California Court of Appeal in an unpublished opinion issued February 23, 2004. The California Supreme Court denied review.

Subsequent habeas petitions in the California courts raising the Sixth Amendment claim were rejected.

## STATEMENT OF FACTS

The California Court of Appeal summarized the facts of this case as follows:

Jordan testified that he was born in July 1985, and he met appellant when he was five years old. Jordan attended the same elementary school as appellant's son (Son) and daughter (Daughter). At first, Jordan thought appellant was "a nice guy" but then appellant did something that made Jordan "feel uncomfortable." Jordan testified that sometime between January 1, 1999, and June 1, 1999, he was at appellant's house in Son's bedroom when Daughter told him that appellant wanted to see him in the living room. Appellant was sitting on the couch and asked Jordan to "sit down and watch T.V. with him." Jordan testified appellant "said he wanted to give me a checkup. He said that he was a doctor, and he asked me like when my last checkup was." When Jordan said he did not remember, appellant said he should give Jordan a checkup. Jordan testified, "I didn't really see the need, but I was like, "um, okay, whatever." Appellant told Jordan he wanted to check his penis. After three or four requests, Jordan "figured that there was no way I was going to get out of it." At appellant's request, Jordan stood up and pulled down

his pants so appellant could see his penis. Appellant moved his hand up and down on Jordan's penis for "probably like five seconds." Jordan returned to Son's room where he spent the night. This incident was charged in count one as a lewd act on a person under the age of 14.

Jordan testified appellant rubbed Jordan's penis in July 1999 at a church camp in Soquel. Because Jordan testified that this incident occurred on his 14th birthday, the trial court acquitted appellant of a count based on this incident charged as a lewd act on a person under the age of 14.

Jordan testified appellant masturbated him in a motel room he and appellant were staying in for a concert in Vallejo in April 2000. Jordan testified that between April and November of 2000, in the guest room of appellant's home, appellant tried to masturbate Jordan's penis and placed his mouth on Jordan's penis.

Chris was the victim in count 6. Chris testified that he was born in May 1984. He played basketball on the Mountain View Academy team and appellant was one of his coaches. Chris was "under the impression [appellant] was a doctor." Chris testified he thought, "at least, he was in the medical field and had some knowledge." In February 2000, Chris developed a bad cramp after a game at another school. His stomach hurt above his waistline. On the sidelines, he asked appellant if he could "check it out" for him. Appellant said they should go into the bathroom and, once there, Chris showed appellant where his stomach hurt. Appellant pushed with his hand on Chris's stomach "just like a doctor would." Chris testified appellant "wash[ed] his hands and [said] something about a bladder infection." Chris testified appellant could tell he was nervous, and told him "Don't worry, I'm a doctor, and I do this every day." Chris moved his shorts and appellant "just check[ed] . . . you know, my scrotum, and he [told] me to cough just like a doctor." Appellant's hand grazed Chris's penis when he took his hand out of Chris's pants. Appellant washed his hands and told Chris he would be fine but that he should eat something. Chris told his mother about this that night. He did not suspect there was anything wrong with what happened until the following school year when allegations of appellant's misconduct with other students surfaced.

Steve was the victim of counts 12 and 15, each charging a sexual battery. He testified he was born in December 1982. He was an exchange student from Taiwan and met appellant when he attended Mountain View Academy with appellant's children. He believed appellant was a doctor. In an incident charged in count 12 as a sexual battery, Steve was talking to appellant in appellant's kitchen when appellant asked to see Steve's penis. Steve thought this was "kind of random" and asked appellant why. Appellant said he wanted to see if Steve was growing properly and if his sperm "was mature or if it was premature." Steve said no, but appellant continued to ask. Appellant suggested they go into the bathroom. There, Steve showed appellant his penis. Steve testified appellant then asked to "jack me off so he could see the sperm maturity and then the erection, see if it's like normal or whatever." Appellant held Steve's penis for about a minute when Steve pushed appellant's hand away and told him, "I'll do it myself. I don't want you to do it." Steve had appellant leave the bathroom. Steve then ejaculated and called appellant back to see the ejaculate.

In an incident charged in count 15 as a sexual battery, appellant jokingly asked to see Steve's penis in appellant's living room. Appellant and Steve began wrestling, and appellant put his hand down Steve's pants. When asked if appellant touched the skin of Steve's penis, Steve answered, "Yes, a little bit."

Steve testified to several other incidents in which appellant asked to see Steve's penis and Steve, after initially refusing, complied. The prosecution conceded that two incidents

related to Steve were either encompassed by other counts or had no evidentiary support, and the trial court dismissed those counts. The trial court acquitted appellant of four other counts related to Steve.

John I played basketball for Mountain View Academy. Appellant was one of his coaches, and John I believed appellant was a doctor. John I became tired one day during practice. Appellant suggested they go into an equipment room to check what was going on with him. Appellant rubbed the area around John I's kidneys, and asked to see his penis. Appellant asked John I if he had pubic hair, and John showed him the hair under his arms. Appellant asked several times to see John I's pubic hair "below" and John showed appellant his penis.

John II testified he was born in September 1983. Sometime in late 1998, John II was spending the night at appellant's house when appellant asked to see John II's genitals so he could see if they were growing properly. After several requests, John II unbuttoned his pants, and appellant touched his penis and testicles. In July 1999, at a church camp in Soquel, appellant asked several times to see John II's genitals to see how they were growing. Appellant felt John II's penis and testicles, and asked him to masturbate himself to get an erection. When John II could not, appellant began masturbating him until John II told him to stop. John II testified to several other incidents where appellant touched his penis.

Carlos, Jonathan and Richard testified pursuant to Evidence Code section 1108 to show propensity. Carlos described incidents in which appellant asked to see his penis. On one occasion, appellant masturbated Carlos until he ejaculated. Appellant told Carlos that some of the other boys let him fondle them. Jonathan described an incident in which appellant asked to check Jonathan's groin injury, then masturbated him and put his mouth on Jonathan's penis. Richard testified he was sleeping on the floor of a room with his team and some coaches as part of a basketball tournament. Appellant was sleeping next to Richard. Richard felt someone touching his penis. The next day, Richard confronted appellant. Richard testified appellant "admitted that he touched me. He said it was like he was just checking if everything was all right."

Sean testified to two incidents occurring in appellant's home in which appellant touched Sean's penis. The trial court acquitted appellant of these two counts because it was not convinced Sean was under the age of 14 when the incidents occurred. P.J. testified to an incident during which appellant put a five-dollar bill down P.J.'s pants. The trial court granted a motion to dismiss this count for insufficient evidence of lewd intent. Hartman testified to two encounters with appellant that the prosecution conceded were outside the statute of limitations, and the trial court dismissed these counts.

Appellant's wife, son and daughter testified at trial. All three said Jordan had not been to their house before August 1999, his freshman year at Mountain View Academy. They disputed some of the testimony offered by Jordan, Sean and Steve, particularly as it related to these boys' visits to appellant's home.

Exh. 6 at 2-5.

## STANDARD OF REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which imposes "a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

The purpose of the AEDPA is "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). The statute's "highly deferential" standard for evaluating state court rulings "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam); *accord, Medina v. Hornung,* 386 F.3d 872, 877 (9th Cir. 2004) (review under AEDPA is "[e]xtraordinarily deferential to the state courts"). Thus, a case that would present a "close question" on direct appeal will not support relief on habeas review. *Ortiz-Sandoval v. Clarke*, 323 F.3d 1165, 1172 (9th Cir. 2003); *accord, Gill v. Ayers*, 342 F.3d 911, 920 (9th Cir. 2003) ("It is logical to conclude that if a case presents an issue close enough for reasonable minds to differ, then a state court's decision resolving that issue, even if incorrect, would not be objectively unreasonable.").

Under the AEDPA, the federal court has no authority to grant habeas relief unless the state court's ruling was "contrary to, or involved an unreasonable application of," clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). A state court's decision is "contrary to" law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or reaches a different conclusion based on facts materially indistinguishable from a Supreme Court case. *Williams v. Taylor,* 529 U.S. at 413. A state court's decision constitutes an "unreasonable application" of Supreme Court precedent if the state court identifies the correct governing legal principles, but the application of law to the facts is not merely erroneous but objectively unreasonable. *Id.* at 411-13; *accord, Price v. Vincent,* 538 U.S. 634, 641 (2003); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Clark v. Murphy*, 331 F.3d 1062, 1067-69 (9th Cir. 2003). The petitioner bears the burden of showing that the state court's decision was unreasonable. *Woodford v. Visciotti*, 537 U.S. at 25. Habeas relief is unwarranted where the state court's ruling was "at least reasonable." *Price v. Vincent*, 538 U.S. at 643; *Early v. Packer*, 537 U.S. 3, 11 (2002) (per curiam); *accord, Brown v. Payton*, 544 U.S. 133, 143 (2005) (even if state court's conclusion was incorrect, it was not unreasonable, and was "therefore just the type of decision that AEDPA

1  shields on habeas review").[2/]

2                                **ARGUMENT**

3                                    **I.**

4      **THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE
        CONVICTIONS ON COUNTS 1, 6, 12 AND 15**

5

6          Petitioner maintains that the "evidence in support of petitioner's state convictions cannot

7  be characterized as sufficient to show guilt beyond a reasonable doubt in counts 1, 6, 12 & 15." Pet.

8  at 6.  Not so.  The trial court heard evidence, which, if believed, supported all of the counts at issue.

9  **A.    Applicable Principles**

10         Clearly established federal law permits habeas relief for insufficient evidence only if

11 "upon the record evidence adduced at the trial no rational trier of fact could have found proof of

12 guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 324 (1979).  Under AEDPA,

13 the question is whether the state court's application of *Jackson* was unreasonable. *Juan H. v. Allen*,

14 408 F.3d 1262, 1264-65 (9th Cir. 2005).

15 **B.    State Court's Findings**

16         The state court considered and rejected the contention that there was insufficient evidence

17 to support the convictions for counts 1, 6, 12 and 15:

18         Appellant raises four challenges to the sufficiency of the evidence.  He contends that
           as to count one, charging a lewd act on a person under 14 in violation of Penal Code
19         section 288, subdivision (a), the evidence is insufficient that the victim, Jordan, was under
           the age of 14.  Appellant contends the evidence is insufficient as to count 6, charging a
20         lewd act on a person 14 or 15 in violation of Penal Code section 288, subdivision (c)(1),
           that appellant had a lewd intent during his contact with Chris.  Appellant contends there
21         is insufficient evidence that he touched the skin of an intimate part of Steve, the victim
           in count 15, charging sexual battery.  He contends there is insufficient evidence to support
22         the conviction in count 12, a second sexual battery on Steve, arguing that the victim was
           less credible than the defense witnesses.

23

24         When an appellant raises a challenge to the sufficiency of the evidence to support a
           conviction, he faces a formidable task.  On appeal "the court 'must review the whole
25         record in the light most favorable to the judgment below to determine whether it discloses

26 _____

27     2.  Where there is no reasoned opinion by the state court, the federal habeas court does not
   conduct a de novo review; it does "perform an 'independent review of the record' to ascertain
28 whether the state court decision was objectively unreasonable." *Himes v. Thompson*, 336 F.3d 848,
   853 (9th Cir. 2003).

*substantial evidence*-that is, evidence which is reasonable, credible, and of solid value-such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.]" (*People v. Cuevas* (1995) 12 Cal.4th 252, 260-261, quoting *People v. Johnson* (1980) 26 Cal.3d 557, 578.) Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom. (*In re James D.* (1981) 116 Cal.App.3d 810, 813.) The conviction will be overturned only if no rational trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206, citing *People v. Jones* (1990) 51 Cal.3d 294, 314.)

*Count One/Jordan's Age*

Count one charged appellant with violating Penal Code section 288, subdivision (a) by committing a lewd act on Jordan when Jordan was under the age of 14. Appellant contends, "the evidence was insufficient to support the notion that Jordan . . . was in fact under the age of fourteen at the time the offense was committed."

Jordan's 14th birthday was in July 1999. He testified that some time between January 1, 1999, and June 1, 1999, appellant rubbed Jordan's penis while they sat in appellant's living room. He testified that he then spent that night at appellant's house, sleeping in Son's room. On cross-examination, he said that when he originally reported the molestations, he told the officers that they all occurred within six or seven months of each other, and that the last incident occurred in November 2000. From this, appellant argues that none of the incidents occurred in 1999. However, Jordan specifically disagreed with defense counsel's suggestion that the first incident was in the late summer of 1999, and testified it was more like "March of '99." He said he was "sure" the incident in appellant's living room happened before he turned 14.

Jordan turned 14 the July before he began high school, in August 1999. When asked if he ever spent the night at appellant's house before starting high school, he answered, "I think that I may have, but I'm not sure." Appellant's wife, his daughter, and his son all testified that Jordan had never been to their house before the beginning of his freshman year of high school, and Jordan was not a close friend of appellant's children before then. They, Jordan, and Jordan's mother all testified concerning Jordan spending the night at appellant's house before performances of the high school choir.

Jordan testified that when he visited appellant's house before starting high school, there was a large white dog at the home. Appellant's wife testified that the family had a white dog, "Snowball," from 1992 until 1996, when it ran away.

The trial court reviewed the evidence as to Jordan's age at the time of the first incident. The court said, "There was testimony that Jordan really didn't come over to the house until he got into high school. And there was no reason for him to come over, because there was no social connection between him or [Son] or [Daughter]. And, of course, Jordan testified to the opposite. And I thought it was credible when he said he was there, because he described in detail what they did, and he described the dog. [¶¶] Now, if that is true, and I accept it, that as a fact, then he had in fact gone over to [appellant's] home before he went to high school. He had been there. Now, whether he stayed overnight and things of that sort is a different issue, but it certainly indicates to me that he did, in fact, go over to [appellant's] home before he went to high school, which is contrary to what [appellant's wife] and [Daughter] and [Son] said."

The trial court described other testimony, concerning another incident between Jordan and appellant, that led the court to the conclusion that Jordan was 13 at the time of the first molest. The court said, "[s]o it's clear to the Court from that testimony, and from the fact that I believe Jordan was at the defendant's home prior to going to Mountain

View Academy, that in the Court's view convinces me beyond a reasonable doubt that this event happened. It happened . . . on the date in question as to Count One."

Sufficient evidence supports the trial court's conclusion that Jordan was under the age of 14 at the time of the incident described in count one. There was a conflict in evidence between what Jordan said and what appellant's family said, and some inconsistencies in Jordan's testimony. This is precisely the type of conflict the trial court is there to resolve. Reviewing the whole record in the light most favorable to the judgment below, we have determined that it discloses substantial evidence such that a reasonable trier of fact could find appellant guilty beyond a reasonable doubt.

### Count 6/Lewd Intent

Count 6 charged appellant with violating Penal Code section 288, subdivision (c), by committing a lewd act on Chris, who was either 14 or 15 years old. Appellant contends there was insufficient evidence to show that he had a lewd intent when he touched Chris. Chris testified that when he developed a severe cramp after playing basketball he asked appellant to check him out. He thought appellant was a physician. Appellant agreed to check Chris, and suggested they go to the bathroom. There, appellant pushed on Chris's stomach and suggested he might have a bladder infection. Appellant told Chris not to worry because he was a doctor. Appellant placed his hand inside the waistband of Chris's shorts and underwear, put his hand on Chris's scrotum, and asked Chris to cough. Chris thought nothing of this incident until several other boys reported that appellant had molested them.

In determining whether this act was performed with the requisite intent, the trier of fact looks to all the circumstances including the manner of the touching. Other relevant factors may include defendant's extrajudicial statements, other acts of lewd conduct admitted or charged in the case, the relationship of the parties, and any coercion, bribery, or deceit used to obtain the victim's cooperation or to avoid detection. (*People v. Martinez* (1995) 11 Cal.4th 434, 445.)

Appellant argues that the evidence of appellant's lewd intent during this incident is insufficient because Chris thought nothing of it at first, Chris asked appellant to check him, "appellant actions were consonant with a 'typical' physical exam," and there is no evidence that either appellant or Chris were aroused.

Appellant's other examinations of the genitals of the boys on the basketball team, including checkups that were followed by masturbation, support a finding of lewd intent in appellant's examination of Chris. Appellant deceived Chris by claiming to be a doctor to dispel Chris's misgivings about appellant's actions. Given the reasonable inferences flowing from this deception and appellant's examinations of the other boys, we cannot say that no rational trier of fact could find beyond a reasonable doubt that appellant had a lewd intent in touching Chris's genitals.

### Count 15/Skin of Intimate Part

Count 15 charged appellant with violating Penal Code section 243.4 by committing a sexual battery on Steve. Appellant contends that there was insufficient evidence that appellant made physical contact with the skin of Steve's sexual organ. (Pen. Code, §§ 243.4, subds. (f) & (g)(1).) Steve testified that appellant touched his penis while they were wrestling in appellant's living room. Appellant started joking with Steve about wanting to see his penis and during the wrestling appellant put his hand down Steve's pants. Steve said appellant touched the skin of his penis "a little bit." Later, Steve said appellant touched the skin of his penis "maybe a little bit" during the living room incident.

MPA In Support Of Answer To Pet. For Writ Of Habeas Corpus - *King v. Adams* - C 07-2936 SI (PR)

1    Following up on this answer, the prosecutor asked Steve whether he was "sure" appellant
      touched the skin of Steve's penis with his hand during this incident and Steve answered,
2    "I'm sure." When asked how many times in all appellant touched the skin of Steve's
      penis, Steve said "one or two times." That included a different incident when appellant
3    touched Steve's penis in the bathroom.

4          Appellant characterizes Steve's answers as "equivocation" concerning whether
      appellant touched Steve's penis during the wrestling incident. Appellant argues, "it is not
5    as if Steve[ ] ever strongly advocated the idea that appellant had touched the skin of his
      penis during the incident."
6
           The strength of Steve's testimony concerning whether appellant touched his penis
7    was for the trier of fact to decide. It may be that the trial court considered any arguable
      equivocation an indication of embarrassment, rather a lack of credibility. A witness's
8    testimony that the defendant touched the skin of an intimate part of his or her body is
      substantial evidence of a sexual battery. (*In re Gustavo M.* (1989) 214 Cal.App.3d 1485,
9    1499.) The reasonable, credible testimony of Steve concerning the wrestling incident
      supports the conviction for sexual battery in count 15.
10
                              *Count 12/Steve's Credibility*
11
12         Count 12 charged appellant with violating Penal Code section 243.4 by committing
      a sexual battery on Steve. This is the incident in which appellant masturbated Steve in the
13   bathroom at appellant's house. Appellant cites to the trial court's remarks that the
      witnesses from appellant's family were the most credible to testify in the trial, and argues,
14   "it is difficult to square the court's observations about the credibility of [appellant's]
      family members with the guilty verdict in count twelve."
15
           We review the whole record in the light most favorable to the judgment below to
16   determine whether it discloses substantial evidence-that is, evidence which is reasonable,
      credible, and of solid value-such that a reasonable trier of fact could find the appellant
17   guilty beyond a reasonable doubt of committing this sexual battery. Steve testified he was
      spending the night at appellant's house, and was going to take the SAT test with
18   appellant's children the next day. He said he came to appellant's house that night very
      upset, and discussed with appellant and his wife that he had unprotected sex with a girl.
19   He was concerned about contracting AIDS. He said this was the only night he ever spent
      in appellant's house.
20
           Appellant's wife testified Steve never spent the night at their house. Son and
21   Daughter testified that Steve did not spend the night before the SAT test at their house.
      They all remember the night Steve came to their house upset. They all testified Steve did
22   not spend the night. They all said Steve left the house after he confided in appellant and
      his wife.
23
           Appellant concedes, "the trier of fact in this case apparently determined that Steve's
24   recitation of the events of that evening was more believable." However, appellant cites
      to the trial court's observation at the end of the trial that "the most credible witnesses in
25   this case were Mrs. King, [Daughter], and [Son]." Appellant argues, "because of the trial
      court's observations about the family's credibility, and because, contrary to the trial
26   court's view, the fact they testified about make it extremely unlikely that they would have
      been mistaken about what had happened that evening, that the trial court erred in finding
27   appellant guilty of the charge in count twelve." This argument glosses over an important
      qualification to the trial court's observations concerning appellant's family's credibility.
28   After making its generous and compassionate remarks about appellant's wife, daughter
      and son, the court said, "That does not mean to say that I believe everything they say has

1
been born out, because I think some of the things they said have not been born out . . . .
I think they were credible, except to say I believe that in some respects their recollection

2
is not accurate." The trial court was free to accept Steve's recollection of the events of
count 12, and to determine that the members of appellant's family were mistaken in theirs.

3
Given the deferential standard of review, we accept the trial court's assessment of the
evidence as to this count and find reasonable, credible and sufficient evidence to support

4
the conviction.

5    Exh. 6 at 7-13.

6    **C.    Petitioner's Claim Fails**

7            There was ample evidence for each count. The trial court, sitting as trier of fact,

8    meticulously explained his decision-making process. He dismissed or found petitioner not guilty

9    on most of the 21 charges. As to the four charges at issue, there was ample evidence which, if

10   believed, would support the convictions. On Count 1, Jordan's testimony that he was under 14 when

11   the molestations occurred was corroborated by his mother and by the dates that petitioner's family

12   owned a dog. *See* RT 1107, 1109-10, 1113. On Count 6, Chris's testimony that petitioner, an

13   accountant, placed his hands on Chris's scrotum and brushed against his penis while simulating

14   giving a medical exam is ample evidence of petitioner's lewd intent. RT 310-311. On Count 15,

15   Steve testified that he was "sure" that petitioner touched his penis. RT 239-240. On Count 12,

16   Steve's testimony that he was at petitioner's house the night before the SAT exam, and that he was

17   molested by petitioner on that night, is sufficient proof of an act of molestation. RT 161-163, 183-

18   184. As petitioner freely acknowledges, the "trier of facts' credibility determinations are entitled

19   to near-total deference." Pet. at 13, *citing Bruce v. Terhune*, 376 F.3d 950, 975 (9th Cir. 2004). The

20   trier of fact believed the victims, and petitioner's rights were not violated.

21                                              **II.**

22   **PETITIONER'S SENTENCE DID NOT VIOLATE THE SIXTH**
     **AMENDMENT**

23

24           After describing the facts of this case as "as bad as any I've ever had because of the nature

25   of the relationship between the defendant and these children, and how he violated that position fo

26   trust by deception," the trial court sentenced petitioner to an upper term of 8 years for Count 1. RT

27   1188-89. The trial court cited two aggravating factors: use of sophisticated planning in carrying out

28   the molestations, and taking advantage of a position of trust to molest the victims. RT 1189.

1    Petitioner contends that, under *Blakely v. Washington*, 542 U.S. 296 (2004), the trial court erred by

2    imposing an upper term based on facts that were neither found by a jury nor admitted by Petitioner.

3    Pet. at 1.  He claims that he "was entitled to a jury determination" of the facts which supported the

4    aggravated term he received for count 1.  Pet. at 1.  Petitioner is incorrect.

5        In *Blakely,* the Supreme Court clarified its holding in *Apprendi v. New Jersey,* 530 U.S.

6    466, 490 (2000), that the Sixth Amendment requires that "[o]ther than the fact of a prior conviction,

7    any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be

8    submitted to a jury, and proved beyond a reasonable doubt."  The *Blakely* Court explained that the

9    "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely

10   on the basis of the facts reflected in the jury verdict or admitted by the defendant."  542 U.S. at 303.

11   However, it is well understood that the right to a jury determination under the Sixth Amendment is

12   subject to waiver by a criminal defendant:

13           The law is well established on how these Sixth Amendment protections can be bypassed.
             If the defendant expressly waives his Sixth Amendment rights, consents to factfinding by
14           the court, or admits the fact otherwise committed to the jury, the Sixth Amendment
             protections are avoided. *See Apprendi,* 530 U.S. at 488, 120 S.Ct. 2348 (observing that
15           no question arises concerning the right to jury trial or the standard of proof when a
             defendant admits earlier convictions); *Blakely v. Washington,* 542 U.S. 296, 310, 124
16           S.Ct. 2531, 159 L.Ed.2d 403 (2004) (noting that when a defendant pleads guilty, "the
             State is free to seek judicial sentence enhancements so long as the defendant either
17           stipulates to the relevant facts or consents to judicial factfinding").

18   *United States v. Milam*, 443 F.3d 382, 387 (4th Cir. 2006).  Here, petitioner waived his right to a

19   jury trial.  *See* CT 761.  In fact, petitioner specifically agreed that "the judge would then be the trier

20   of the fact[s], as well as the trier of the law, and there would be no jury."  RT 3.  Accordingly, he

21   waived his right to jury findings, and cannot now complain about lack of jury findings in connection

22   with his sentence.

23        Moreover, Petitioner has failed to show prejudice.  The Supreme Court has held that a

24   *Blakely*-type error in failing to submit an aggravating circumstance to a jury is subject to harmless

25   error analysis.  *Washington v. Recuenco*, ___ U.S. ___, 126 S. Ct. 2546, 2553 (2006).  Recently, the

26   Court affirmed that the "substantial and injurious effect or influence" on the verdict test articulated

27   in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993), is to be applied to all federal habeas cases.

28   *Fry v. Pliler*, ___ U.S. ___, 127 S.Ct. 2321, 2326-28 (2007).

1    Here, any error was harmless since the trial court's reasons for imposing the upper term

2    were observations drawn from largely uncontested or overwhelming evidence.  There was no

3    question that petitioner had used his status as a coach to gain access to young boys, and that he

4    preyed upon those boys by pretending to be a doctor (although he was merely an accountant who

5    worked at a hospital).  By the same token, the unrebutted evidence showed that petitioner's

6    molestations were well planned, not done on the spur of the moment.  Thus, a jury would surely

7    have found these aggravating factors true as well if it had been asked to render a verdict on it.

8                                          **CONCLUSION**

9    For the foregoing reasons, the petition for writ of habeas corpus should be denied.

10    Dated:  October 3, 2007

11                              Respectfully submitted,

12                              EDMUND G. BROWN JR.
                               Attorney General of the State of California

13                              DANE R. GILLETTE
                               Chief Assistant Attorney General

14                              GERALD A. ENGLER
                               Senior Assistant Attorney General

15                              PEGGY S. RUFFRA
                               Supervising Deputy Attorney General

16

17

18                              /s/  Ross C. Moody

19                              ROSS C. MOODY
                               Deputy Attorney General

20                              Attorneys for Respondent

21    20104977.wpd
       SF2007401982

22

23

24

25

26

27

28

MPA In Support Of Answer To Pet. For Writ Of Habeas Corpus - *King v. Adams* - C 07-2936 SI (PR)

12