ALTON KING

Department of Correction

885 N. San Pedro Street

San Jose, CA 95110

FILED

DEC -7 PM 1:12

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

U.S. DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALTON KING, | C 07-2936 SI (PR) |
| Petitioner, | PETITIONER'S TRAVERSE |
| v. | |
| LAURIE SMITH, SHERIFF, | |
| Respondent, | |

## CUSTODY

Petitioner, ALTON KING, is lawfully in the "custody" of LAURIE SMITH, Sheriff, of Santa Clara County Jail.

## ARGUMENT

**EVIDENCE WAS INSUFFICIENT TO SUPPORT THE CONVICTION ON COUNTS 1, 6, 12 and 15.**

Petitioner maintains that the evidence in support

(1)

of petitioner's State convictions on counts 1,6,12 and 15 was insufficient. Clearly, there was reasonable doubt with the trier of fact Judge, by the clear statement, **"THE MOST CREDIBLE WITNESSES IN THIS CASE WERE MRS. KING, JUSTIN KING, AND JESSICA KING."** There were three of the same testimony, versus one testimony, per each victim. If the recollection of Mrs. King, Justin, and Jessica, was in question, is it not possible that the victims recollection was not accurate also.

### COUNT ONE/JORDAN'S AGE

It was the testimony of three witnesses that Jordan had not spent the night at petitioner's house before August 1999, his freshman year at Mountain View Academy. It was also Jordan's original statement that the first time he spend the night at petitioner's house was for the high school choir performances. "It was also Jordan's testimony at the trial that "ALL THE INCIDENTS OCCURRED WITHIN SIX OR SEVEN MONTHS OF EACH OTHER, AND THE LAST INCIDENT OCCURRED IN NOVEMBER 2000." Again, Jordan was asked at the trial if he ever spent the night at petitioner's house before starting high school. Jordan responded, **"I THINK I MAY HAVE, BUT I AM NOT SURE."** Jordan's mother also testified in her original statement to the police that "Jordan never spent the night at petitioner's house before the high school choir performances. With Jordan's own testimony when asked at trial, and he responded, "I think that I may have, but he is not sure." "All the incident occurred within six or seven months of each other, and the last incident occurred in November 2000." Then how can the testimony of Jordan be

1  taken over three most credible witnesses.
2           Jordan described the family dog, a white dog, name
3  "Snowball." Everyone at the school, and the pathfinder club
4  knows the dog. Snowball went every where with the family.
5  Snowball went on all the camping trips with the pathfinder club.
6  All the kids loves her, because she was such a beautiful dog.
7  So, of course, Jordan knows Snowball very well. Jordan would
8  see Snowball at least once a week when petitioner's family takes
9  her to the Pathfinder Club meeting. If all the kids in the
10 school and the Pathfinder Club were to ask if they know the
11 King's family dog, they would all answer, "YES." All the kids
12 loved her.
13
14                   **COUNT 6/CHRIS LEWD INTENT**
15          Petitioner's action was innocent. Chris approach
16 petitioner during a basketball game, because of severe cramp
17 in his lower stomach. He said he felt like regurgitating.
18 Petitioner asked chris to stand over the toilet just incase
19 he started to regurgitate. After a few minutes, nothing happen.
20 Petitioner asked chris to step back. Petitioner asked Chris
21 how is he feeling now. Chris replied, "the same." Petitioner
22 pushed around on chris lower stomach below his waistline and
23 asked him if it hurts, Chris replied, "No, just cramp inside
24 the stomach." Petitioner asked Chris, "did you eat anything
25 today." Chris replied, "no." Petitioner suggested to Chris
26 that he might be having gas pain from not eating. Petitioner
27 then escorted Chris to the food stand and purchased a hot dog
28 and a warm Ginger Ale soda. Chris ate, and a few minutes later

1 told petitioner that he was feeling much better. Petitioner
2 argue, "there were no lewd intent.
3
4            **COUNT 15/STEVE TOUCHING OF SKIN**
5     Steve testified that he wrestle with petitioner quite
6 often. At trial steve testifies that petitioner touched the
7 skin of his penis **"A LITTLE BIT"** (RT 192). Later steve testified
8 that petitioner touched the skin of his penis **"MAYBE A LITTLE**
9 **BIT"** (RT 239-240). Steve was unsure of his answers until he
10 was pushed by the prosecutor. Petitioner argument still stand,
11 "It is not as if steve ever strongly advocated the idea that
12 petitioner had touched the skin of his penis during any of the
13 incidents."
14
15              **COUNT 12/STEVE CREDIBILITY**
16     It was the testimony of three credible witnesses that
17 Steve did not spent the night at petitioner's house before the
18 SAT exam. Steve came to petitioner's house the Saturday night
19 before the SAT test, which would take place on Sunday morning.
20 Steve was very upset. Petitioner and his wife took Steve to
21 their bedroom and had a long talk with him. After the conver-
22 sation, Steve requested to talk to petitioner alone. Petitioner
23 and Steve went to the kitchen. Steve expressed some concerns
24 that he was doing drugs and having unprotected sex. He was
25 concerned about contracting AIDS. Petitioner explained to Steve
26 the best way he could to help him understand the direction he
27 is taking with his life. After an episode of Steve masturbation
28 until ejaculation was done. Once Steve had attained his orgaism,

1  then called petitioner back into the bathroom to show him his
2  ejaculation. (RT 186). Because Steve was so disoriented,
3  petitioner suggested to steve to spend the night. However,
4  Steve refused, because he had to go home and prepared for the
5  SAT exam the following day, and also for the trip to Colorado,
6  to join the school choir. So, for those reasons, Steve went
7  home. Petitioner met with Steve the following day at the school.
8  Petitioner, Justin and Jessica, along with Steve flew to Colorado
9  to join the school choir. "Steve did not spent the night at
10 petitioner's house the night before the SAT exam." Three
11 credible witnesses testified to that.

## PETITIONER'S SENTENCE DID VIOLATE

## THE SIXTH AMENDMENT

15        The Attorney General argue that petitioner waive the
16 right to a jury determination under the sixth amendment.
17 Petitioner agreed to waive his right to a jury trial under the
18 direction of his attorney. However, petitioner did not agree
19 to waive his right to a jury determination for sentencing, and
20 that is what **BLAKELY V. WASHINGTON, 542 U.S. 296,310,124 S.CT.**
21 **2531,159 L.ED.2d 403 (2004)** is all about. However, in that
22 petitioner did waive his right to a jury with respect to the
23 trial. When petitioner waived his right to a jury trial,
24 petitioner certainly could not have known that Blakely would
25 be decided. In order for the waiver of constitutional rights
26 to be effective, the waiver must be knowing and intelligent.
27 (People v. Water (1991) 54 Cal.3d 1013,1025.) Thus, petitioner
28 submits that since he was unaware of his right to have a jury

decide aggravating sentencing factors, that his waiver with respect to a jury trial should not be deemed to "carry over" to the sentencing. (Petitioner is aware that one court has held that when a defendant waives his or her right to a jury trial, that he or she also waives the right to a jury deciding sentencing factors. (People v. Fernandez (E03406, Oct. 19, 2004)___ Cal. App. 4th___ [2004 Cal. App. Lexis 1737]. Petitioner submits that the brief discussion of this issue in Fernandez is incorrect since a defendant who waived the right to a jury trial before **BLAKELY** was decided could not have known or anticipated how **BLAKELY** would affected the right to a jury trial on sentencing factors.)

The rules governing the imposition of consecutive terms also should be held to violate **Apprendi and Blakely**. Under penal code section 669, it is the trial judge's duty to order whether particular prison sentences should be served consecutively or concurrently. However, if the court fails to so specify, the sentences must be served concurrently. Thus, the statutory scheme suggests that a defendant has a "legal right" to concurrent terms unless the court says otherwise.

In this case the trial court imposed consecutive terms because of its determination that the crimes involved separate occasions. Under **Blakely**, these are factors that, unless admitted, should be decided by a jury.

Accordingly, under the sixth amendment reasoning of **Blakely and Apprendi**, petitioner is entitled to jury determination of any such aggravation circumstance used to impose an upper term and those findings must be subject to a reasonable

(6)

doubt standard of proof (**Blakely, at PP. 418-419**), rather than a preponderance standard, as California law currently provides (Cal. Rules of Court, Rule 4.420 (b).)[3]

---

[3] That a jury was not instructed to find the aggravating circumstance beyond a reasonable doubt also constitutes a violation of petitioner's rights under the Fifth Amendment. As the Supreme Court observed in Sullivan v. Louisiana (1993) 508 U.S. 275,278:

> It is self-evident, I think, that the Fifth Amendment requirement of proof beyond a reasonable doubt and the Sixth Amendment requirement of a jury verdict are inter-related. It would not satisfy the Sixth Amendment to have a jury determine that the defendant is probably guilty, and then leave it up to the judge to determine (as Winship Regures), whether he is guilty beyond a reasonable doubt. In other words, the jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt.

**Under Cunningham v. California, the upper term sentence is unconstitutional because that sentence was based on judicial fact finding, and because petitioner has no prior convictions. Under the rationale of Cunningham, the consecutive terms**

(7)

1          **should also be deemed unconstitional.**

2         On January of 2007, the United States Supreme Court

3 decided Cunningham v. California (1-22-2007) 549 U.S.___,127

4 S. Ct. 856, 166 L. ED.2d 856.  Cunningham held that under

5 California's Determinate Sentencing Law (DSL), it was improper

6 for the trial court to impose an upper term sentence because

7 the facts upon which that upper term is based bust ordinarily

8 be decided by a jury.  Cunningham reversed the California Supreme

9 Court's decision in People v. Black (2005) 35 Cal. 4th 1238,

10 which had held that the DSL was constitutional.

11         Cunningham was based on earlier precedent in **Blakely**

12 **v. Washington (2004) 542 U.S. 296 and Apprendi v. New Jersey**

13 **(2000) 530 U.S. 466.**  Based on those cases, petitioner filed

14 a petition for writ of habeas corpus in the state appellate

15 court in November of 2004.  Petitioner then raised that claim

16 agian in the California Supreme Court in December of 2005.

17 Both courts rejected the claims.

18         Cunningham over ruled People v. Black, supra, and

19 held that California's Determinate Sentencing Law (DSL) violated

20 the Sixth and Fourteenth Amendments' guarantee of the right

21 to a jury trial.  Cunningham relied on **Blakely v. Washington,**

22 **supra, and Apprendi v. New Jersey, supra.**  In **Blakely** the trial

23 judge had increased the defendant's sentence because of the

24 judge's determination that he had acted with "diliberate cruelty"

25 Even though the sentence imposed did not exceed the maximum

26 sentence allowed by statute, the Supreme Court nonetheless found

27 it violated the Sixth Amendment because the "diliberate Cruelty"

28 factual determination had been made by the judge and not a jury.

1  Thus, the statutory maximum sentence a judge may impose can
2  only be based either on facts reflected in the jury verdict
3  or admitted by the defendant.  (**Blakely v. Washington, supra,**
4  **542 U.S. at P. 303**).
5           Cunningham held California's DSL violates "**Apprendi's**
6  bright line rule." (Cunningham v. California, supra, 127 S.
7  Ct. at P. 868.)  Accordingly, the middle term is the "relevant
8  statutory maximum.  Because the DSL authorizes the judge, not
9  the jury, to find the facts permitting an upper term sentence,
10 the system cannot withstand measurement against our Sixth
11 Amendment Precedent." (Id, 127 S. Ct. at P. 871.)
12          On February 20, 2003, the trial court in this case
13 sentenced petitioner to a term of 14 years and 8 months
14 calculated as follows: 8 year upper term for the conviction
15 for lewd and lascivious conduct on a child under 14; 6 consecu-
16 tive 8 month terms for lewd and lascivious conduct on a child
17 of 14 or 15 convictions; another 8 month consecutive term for
18 the oral copulation conviction; and 2 consecutive 1 year terms
19 for the sexual battery convictions. (CT 932-933.)
20          In choosing the aggravated 8 year term the court cited
21 two reasons.  The court first noted that the offense involved
22 planning, sophistication, and professionalism. (Cal. Rules of
23 Court, rule 4.421(A)(8).)  The court also found that the
24 petitioner had taken advantage of a position of trust and
25 confidence.  (Cal. Rules of Court, rule 4.421(A)(11).)  With
26 respect to the consecutive sentences, the court justified those
27 because of its determination that the crimes involved separate
28 victims and/or that they occurred on separate occasions.

1  None of the aggravating factors cited by the trial
2 judge were found true by a jury. Yet under Cunningham, only
3 a jury can make those factual determinations. Clearly, the
4 trial court erred when it imposed the 8 year upper term
5 aggravated sentence.
6  The rules governing the imposition of consecutive
7 terms also should be held to violate Apprendi, Blakely, and
8 Cunningham. Under Penal Code section 669, it is the trial
9 judge's duty to order whether particular prison sentences should
10 be served consecutively or concurrently. However, if the court
11 fails to so specify, the sentences must be served concurrently.1
12 Thus, the statutory scheme suggests that a defendant has a "legal
13 right" to concurrent terms unless the court says otherwise.[2]
14  In this case the trial court imposed consecutive terms
15 because of its determination that the crimes involved separate
16 victims and/or that they occurred on separate occasions. Under
17 **Blakely**, these are factors that, unless admitted, should be
18 decided by a jury.
19  The next issue then is whether the error here was
20 prejudicial. The Chapman[3] standard applies. The error requires
21 reversal unless it can be shown beyond a reasonable doubt that
22 the error did not contribute to the verdict. (Washington v.
23 Recuenco (2006) 548 U.S.___,126 S. Ct. 2546,2551, 165 L.E.2d
24 466.)
25  Here, petitioner submits that the error cannot be
26 deemed harmless. In the context of an error affecting the right
27 to a jury trial on elements or enhancements, a reviewing court
28 cannot simply ask whether there was overwhelming evidence

(10)

supporting the finding in question.  A far more rigorous form of Chapman analysis, focusing on what facts the fact-finder necessarily found in reaching a decision is;

---

[1] Penal Code section 669 provides in pertinent part:

"When any person is convicted of two or more crimes, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same judge or by different judges, the second or other subsequent judgment upon which sentence is ordered to be executed shall direct whether the terms of imprisonment or any of them to which he or she is sentenced shall run concurrently or consecutively ...¶...Upon the failure of the court to determine how the terms of imprisonment on the second or subsequent judgment shall run concurrently.."

[2] See **Blakely v. Washington, supra,** 159 L.Ed.2d at P. 417, where the court stated that it is "legal right to a lesser sentence" that "makes all the difference" when considering whether any particular defendant has a right to a jury determination of the facts supporting that lesser sentence.

[3] Chapman v. California (1967) 386 U.S. 18,24. required in this context.  Thus, the error cannot be harmless if the omitted element is susceptible to dispute.  A reviewing court does not "become in effect a second jury to determine whether the defendant is guilty."  (Neder v. United State (1999) 527 U.S. 1,19.

Here, the only factors the court relied on for imposing the aggravated term and consecutive terms were non-recidivist

(11)

1 related factors. There is simply no way to know that a jury
2 would have made the same factual determinations that the trial
3 judge did. Accordingly, the sentences should be found to have
4 violated the United State Constitution.

## CONCLUSION

Therefore, for all of the reasons articulated in this Traverse, this court should issue its writ ordering the State of California to release petitioner from its custody forthwith.

DATE: December 04, 2007

Respectfully submitted,

ALTON A. KING
Petitioner