1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
**For the Northern District of California**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALTON KING,

        Petitioner,

    v.

DERRAL ADAMS, Warden,

        Respondent.
_____/

No. C 07-2936 SI (pr)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

**INTRODUCTION**

This matter is now before the court for consideration of the merits of Alton King's pro se petition for writ of habeas corpus concerning his conviction in the Santa Clara County Superior Court. For the reasons discussed below, the petition will be denied.

**BACKGROUND**

Alton King was an assistant high school basketball coach at Mountain View Academy and was charged with numerous sex offenses against minors. Although he was an accountant, he led the boys to believe he was a doctor and used that ruse to view and touch their genitalia. The particulars of some of the crimes are discussed in greater detail later in this order in connection with the insufficient evidence claims.

King was charged with 21 counts of sex offenses against nine minors. He waived his right to a jury trial and had a bench trial in late 2002. The court granted a mid-trial motion to dismiss eight counts and dismissed one more count at the conclusion of the trial. The court then found King not guilty of three counts and guilty on the ten remaining counts. Specifically, King was

found guilty of one count of lewd conduct on a child under the age of 14, six counts of lewd conduct on a child 14 or 15 years of age, one count of oral copulation with a person under the age of 18, and two counts of sexual battery. On February 20, 2003, the court sentenced King to a total of 14 years and 8 months in prison.

King appealed. His conviction was affirmed by the California Court of Appeal and his petition for review was denied by the California Supreme Court. He also filed unsuccessful state habeas petitions.

King then filed this action, seeking a writ of habeas corpus under 28 U.S.C. § 2254. He asserted two claims: (1) a due process claim based on the insufficiency of the evidence to support counts 1, 6, 12, and 15, and (2) an Apprendi claim regarding his sentence. The court issued an order to show cause why the petition should not be granted. Respondent filed an answer and King filed a traverse.[1] The matter is now ready for decision the merits.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over the petition for writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Santa Clara County, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. 28 U.S.C. § 2254(b), (c). State judicial remedies have been

---

[1]Respondent has requested that he be substituted in as the respondent to replace the county sheriff, who King erroneously named as respondent. Warden Derral Adams is hereby substituted in as the respondent in this action.

United States District Court
For the Northern District of California

1    exhausted for the claims presented in the petition.

2

3                              **STANDARD OF REVIEW**

4          This court may entertain a petition for writ of habeas corpus "in behalf of a person in

5    custody pursuant to the judgment of a State court only on the ground that he is in custody in

6    violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The

7    petition may not be granted with respect to any claim that was adjudicated on the merits in state

8    court unless the state court's adjudication of the claim: "(1) resulted in a decision that was

9    contrary to, or involved an unreasonable application of, clearly established Federal law, as

10   determined by the Supreme Court of the United States; or (2) resulted in a decision that was

11   based on an unreasonable determination of the facts in light of the evidence presented in the

12   State court proceeding."  28 U.S.C. § 2254(d).

13         "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

14   arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or

15   if the state court decides a case differently than [the] Court has on a set of materially

16   indistinguishable facts."  Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

17         "Under the 'unreasonable application' clause, a federal habeas court may grant the writ

18   if the state court identifies the correct governing legal principle from [the] Court's decision but

19   unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  "[A] federal

20   habeas court may not issue the writ simply because that court concludes in its independent

21   judgment that the relevant state-court decision applied clearly established federal law

22   erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  A

23   federal habeas court making the "unreasonable application" inquiry should ask whether the state

24   court's application of clearly established federal law was "objectively unreasonable."  Id. at 409.

25   /  /  /

26   /  /  /

27

28

United States District Court
For the Northern District of California

**DISCUSSION**

A.    <u>Sufficiency Of The Evidence To Support Conviction On Counts 1, 6, 12 and 15</u>

King contends that the evidence was insufficient to support the conviction on four counts. As to the conviction on count 1 for committing a lewd act on a person under age 14, he contends the evidence was insufficient that the victim was under 14 years old.  As to the conviction on count 6 for committing a lewd act on a person 14 or 15 years old, he contends that the evidence was insufficient that he acted with a lewd intent.  As to the conviction on count 12 for sexual battery, he contends that the evidence was insufficient because the victim was less credible than the defense witnesses.  As to the conviction on count 15 for sexual battery, he contends the evidence was insufficient that he touched the skin of an intimate part of the victim.  The California Court of Appeal rejected each of the challenges in a reasoned decision.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  <u>In re Winship</u>, 397 U.S. 358, 364 (1970).  A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt, but rather determines whether, "after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979); <u>see</u> <u>Payne v. Borg</u>, 982 F.2d 335, 338 (9th Cir. 1992).  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted.  <u>See</u> <u>Jackson</u>, 443 U.S. at 324; <u>Payne</u>, 982 F.2d at 338.  The "prosecution need not affirmatively 'rule out every hypothesis except that of guilt,'" and the reviewing federal court "'faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  <u>Wright v. West</u>, 505 U.S. 277, 296-97 (1992) (quoting <u>Jackson</u>, 443 U.S. at 326).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1.      Count 1

In Count 1, King was convicted of committing a lewd act on a person "under the age of 14 years." Cal. Penal Code § 288(a). The California Court of Appeal rejected King's contention that the evidence was insufficient that the victim was under the age of 14 at the time of the crime.

> Jordan's 14th birthday was July 18, 1999. He testified that some time between January 1, 1999, and June 1, 1999, appellant rubbed Jordan's penis while they sat in appellant's living room. He testified that he then spent that night at appellant's house, sleeping in [King's son] Justin's room. On cross-examination, he said that when he originally reported the molestations, he told the officers that they all occurred within six or seven months of each other, and that the last incident occurred in November 2000. From this, appellant argues that none of the incidents occurred in 1999. However, Jordan specifically disagreed with defense counsel's suggestion that the first incident was in the late summer of 1999, and testified it was more like "March of '99." He said he was "sure" the incident in appellant's living room happened before he turned 14.
>
> Jordan turned 14 the July before he began high school, in August 1999. When asked if he ever spent the night at appellant's house before starting high school, he answered, "I think that I may have, but I'm not sure." Appellant's wife, his daughter Jessica, and his son Justin all testified that Jordan had never been to their house before the beginning of his freshman year of high school, and Jordan was not a close friend of appellant's children before then. They, Jordan, and Jordan's mother all testified concerning Jordan spending the night at appellant's house before performances of the high school choir.
>
> Jordan testified that when he visited appellant's house before starting high school, there was a large white dog at the home. Appellant's wife testified that the family had a white dog, "Snowball," from 1992 until 1996, when it ran away.

Cal. Ct. App. Opinion, p. 8. The court of appeal discussed the trial court's comments about the conflicting evidence and the trial court's factual determination that Jordan was at King's house before he started high school, and therefore the event occurred before he turned 14. The state appellate court concluded: "Sufficient evidence supports the trial court's conclusion that Jordan was under the age of 14 at the time of the incident described in count one. There was a conflict in evidence between what Jordan said and what appellant's family said, and some inconsistencies in Jordan's testimony. This is precisely the type of conflict the trial court is there to resolve." Cal. Ct. App. Opinion, p. 9.

The state appellate court used the applicable federal standard, even if it did not mention Jackson or any other specific federal case.    See Early v. Packer, 537 U.S. 3, 8 (2002) (per

5

United States District Court
For the Northern District of California

curiam) (not necessary to cite Supreme Court cases for § 2254(d) to apply).  That court reasonably applied the proper standard. Jordan's testimony showed that one lewd act occurred before his 14th birthday.  He testified that King touched his penis in his medical exam routine in a tent when they were attending a religious camp in Soquel.  Jordan had a specific recollection that this occurred on the last day of camp, on a day that happened to be his 14th birthday --a date he could fix because he specifically remembered receiving luggage for this birthday.  See RT 526-529.  Critically, Jordan also testified that this incident was not the first time King had touched his penis; indeed, he yielded to King's request in the tent to examine his penis because he knew from the earlier touching event that King would persist in his requests.  See RT 529-533.  The earlier incident had happened weeks or months earlier.  RT 538, 546-547, 570, 576. Jordan's testimony that the second incident took place on his 14th birthday and the first incident occurred weeks or months earlier provided sufficient evidence to support the conviction for committing a lewd act on a person under the age of 14.

King argues that the evidence was insufficient because three witnesses testified that Jordan had not spent the night at King's house before he started high school in August 1999, and that was Jordan's original statement.  The evidence was in conflict, but a conflict in the evidence did not mean that it was legally insufficient.  King suggests that since the trial judge stated that the "most credible witnesses" were King's wife, daughter and son, their testimony should be believed over that of any contrary testimony.  He takes the trial judge's observation about credibility out of context and omits the important qualifier the trial judge noted, which was that even credible people can be wrong on some points.[2]  When read in toto, the trial judge's

---

[2]The trial judge stated that there was a lot of testimony about critical dates and times and some of the witnesses were not very credible on these points.

[B]ut I can tell you who I thought was very credible.  And I'm not making a judgment as to the fact that everything they said was accurate, because a person could be very credible but can make an innocent misrecollection.  And it happens with all of us when we are asked to recall and relate back two years, three years, four years as to a specific date time or event.  And I think people can make what I believe to be innocent misrecollections, which in the court's judgment does not mean they were not credible.

6

United States District Court
For the Northern District of California

comments do not amount to a determination that everything King's family members said was correct.  The due process inquiry requires the court to determine whether "<u>any</u> rational trier of fact could have found the essential elements of [committing a lewd act on a child under 14] beyond a reasonable doubt."  <u>See</u> <u>Jackson</u>, 443 U.S. at 319.  That test was met for count 1.

       2.   <u>Count 6</u>

In Count 6, King was convicted of committing a lewd act on a child age 14 or 15.  Cal. Penal Code § 288(c).  The California Court of Appeal rejected King's contention that the evidence was insufficient that he acted with lewd intent with regard to this victim.

> Chris testified that when he developed a severe cramp after playing basketball he asked appellant to check him out.  He thought appellant was a physician.  Appellant agreed to check Chris, and suggested they go to the bathroom.  There, appellant pushed on Chris's stomach and suggested he might have a bladder infection.  Appellant told Chris not to worry because he was a doctor.  Appellant placed his hand inside the waistband of Chris's shorts and underwear, put his hand on Chris's scrotum, and asked Chris to cough.  Chris thought nothing of this incident until several other boys reported that appellant had molested them.
>
> In determining whether this act was performed with the requisite intent, the trier of fact looks to all the circumstances including the manner of the touching.  Other relevant factors may include defendant's extrajudicial statements, other acts of lewd conduct admitted or charged in the case, the relationship of the parties, and any coercion, bribery or deceit used to obtain the victim's cooperation or to avoid detection.  (<u>People v. Martinez</u> (1995) 11 Cal.4th 434, 445.)
>
> Appellant argues that the evidence of appellant's lewd intent during this incident is insufficient because Chris thought nothing of it at first, Chris asked appellant to check him, "appellant['s] actions were consonant with a 'typical' physical exam," and there is no evidence that either appellant or Chris were aroused.
>
> Appellant's other examinations of the genitals of the boys on the basketball team, including checkups that were followed by masturbation, support a finding of lewd intent in appellant's examination of Chris.  Appellant deceived Chris by claiming to be a doctor

---

> I believe that the most credible witnesses in this case were Mrs. King, Jessica, and Justin.  There is no question in the court's mind.  That does not mean to say that I believe everything they say has been born (sic) out, because I think some of the things they said have not been born (sic) out.  But I simply believe that they did not in any way attempt to intentionally fabricate.  I don't believe they did anything to dishonor the oath they took to benefit the defendant.  I think they were honest.  I think they were credible, except to say I believe that in some respects their recollection is not accurate.

RT 1160-61.  The trial judge's very next comment was that he believed Jordan was at the Kings' home before he turned 14, and was 14 when the count 1 event occurred.  RT 1161-62.

United States District Court
For the Northern District of California

to dispel Chris' misgivings about appellant's actions.  Given the reasonable inferences flowing from this deception and appellant's examination of the other boys, we cannot say that no rational trier of fact could find beyond a reasonable doubt that appellant had a lewd intent in touching Chris's genitals.

Cal. Ct. App. Opinion, p. 10.

The California Court of Appeal's rejection of King's claim was not contrary to or an unreasonable application of clearly established federal law.  King argues that no testimony established sexual arousal by either party.  Arousal is not legally necessary, as the statute defines the intent element more broadly:   "the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child."  Cal. Penal Code § 288(a).  He also suggests no liability should attach because his acts "were consonant with a 'typical' physical exam."  Resp. Exh. 3, Appellant's Opening Brief, p. 23.  This ignores both that he was not a doctor and that the boy was complaining of a stomach ache.  A rational trier of fact would have no problem finding a lewd intent.  Although the boy initially saw the touching as a routine medical exam by a doctor, circumstantial evidence supported a finding that King acted with a lewd intent, including other instances when King viewed and touched the genitals of other boys at the school, some of which included masturbation, plus the deception that he was a doctor that allowed him to gain access to the various boys' genitalia.   The evidence was constitutionally sufficient on count 6.

3.    Count 15

In Count 15, King was convicted of committing a sexual battery on a student named Steve.  Cal. Penal Code § 243.4.  The California Court of Appeal rejected King's contention that the evidence was insufficient that he made physical contact with the skin of Steve's sexual organ.

Steve testified that appellant touched his penis while they were wrestling in appellant's living room.  Appellant started joking with Steve about wanting to see his penis and during the wrestling appellant put his hand down Steve's pants.  Steve said appellant touched the skin of his penis "a little bit."  Later, Steve said appellant touched the skin of his penis "maybe a little bit" during the living room incident.  Following up on this answer, the prosecutor asked Steve whether he was "sure" appellant touched the skin of Steve's penis with his hand during this incident and Steve answered, "I'm sure."  When asked how many times in all appellant touched the skin of Steve's penis, Steve said "one

or two times."  That included a different incident when appellant touched Steve's penis in the bathroom.

Appellant characterizes Steve's answers as "equivocation" concerning whether appellant touched Steve's penis during the wrestling incident.  Appellant argues, "it is not as if Steve[] even strongly advocated the idea that appellant had touched the skin of his penis during the incident."

The strength of Steve's testimony concerning whether appellant touched his penis was for the trier of fact to decide.  It may be that the trial court considered any arguable equivocation an indication of embarrassment, rather [than] a lack of credibility.  A witness's testimony that the defendant touched the skin of an intimate part of his or her body is substantial evidence of a sexual battery.  (In re Gustavo M. (1989) 214 Cal.App.3d 1485, 1499.)  The reasonable, credible testimony of Steve concerning the wrestling incident supports the conviction for sexual battery in count 15.

Cal. Ct. App. Opinion, p. 11.

The California Court of Appeal's rejection of King's claim was not contrary to or an unreasonable application of clearly established federal law.  It may have been a brief touching – what Steve described as touching his penis "a little bit" – but it nonetheless was a touching.  See RT 192, 240.  Steve's testimony also made it abundantly clear that the touching of his penis was not inadvertent contact in a wrestling match as he described King's repeated efforts to get his hands down Steve's pants.  For a conviction under California Penal Code § 243.4, there must be a touching of "an intimate part of another person."  "Intimate part" is defined as "the sexual organ, anus, groin, or buttocks of any person, and the breast of a female."  Cal. Penal Code § 243.4(g)(1).  "Touching" is defined as "physical contact with the skin of another person whether accomplished directly or through the clothing of the person committing the offense."  Cal. Penal Code § 243.3(f).  There was constitutionally sufficient evidence to support the conviction on count 15.

4.    Count 12

In count 12, King was convicted of committing another sexual battery on Steve (the same student as in count 15) by touching Steve's penis in a bathroom at King's house.  Cal. Penal Code § 243.4.  One night when Steve (who believed King to be a doctor) was at King's house and talking to him, King asked to see Steve's penis.  Steve initially declined, but King persisted,

9

**United States District Court**
For the Northern District of California

1  claiming a need to check the development of Steve's penis and sperm.  Eventually, they ended

2  up in the bathroom, where Steve showed King his penis.  King asked to masturbate him claiming

3  a need to check his sperm and his erection, and held Steve's penis for about a minute until Steve

4  pushed him away.  Cal. Ct. App. Opinion, p. 4.

5       There was conflicting testimony as to whether Steve spent the night at the house on the

6  night he stated this event occurred.

7       Steve testified he was spending the night at appellant's house, and was going to take the
        SAT test with appellant's children the next day.  He said he came to appellant's house that
8       night very upset, and discussed with appellant and his wife that he had had unprotected
        sex with a girl.  He was concerned about contracting AIDS.  He said this was the only
9       night he ever spent in appellant's house.

10      Appellant's wife testified Steve never spent the night at their house.  Justin and
        Jessica testified that Steve did not spend the night before the SAT test at their house.
11      They all remember the night Steve came to their house upset.  They all testified Steve did
        not spend the night.  They all said Steve left the house after he confided in appellant and
12      his wife.

13  Cal. Ct. App. Opinion, p. 12.

14      The California Court of Appeal rejected King's contention that the evidence was

15  insufficient based on the relative credibility of the witnesses.  King argued there, as here, that

16  the trial judge's observation that his family witnesses were most credible means that Steve's

17  testimony that differed from theirs was not enough to support the conviction.  The appellate

18  court rejected the argument that the trial court's observations about the credibility of King's

19  family members – quoted earlier at footnote 2 of this order-- meant Steve was not to be believed.

20  King's argument "glosse[d] over an important qualification to the trial court's observation

21  concerning appellant's family's credibility," i.e., that the trial court's next statement was that they

22  were not accurate in all their recollections.  Id. at 13.  "The trial court was free to accept Steve's

23  recollection of the events of count 12, and to determine that the members of appellant's family

24  were mistaken in theirs. Given the deferential standard of review, we accept the trial court's

25  assessment of the evidence as to this count and find reasonable, credible and sufficient evidence

26  to support the conviction."  Id.

27      The California Court of Appeal's rejection of King's claim was not contrary to or an

28

10

unreasonable application of clearly established federal law.  The trial judge's observation that he found King's family members to be credible appears to have been an effort to be kind to them, and to let them know that he did not think they were lying   The judge's comments do not show that as the trier of fact he disbelieved Steve on the details critical to this conviction.  Not only did the judge indicate that there could be innocent misrecollection by the family members, but a comment by the judge at the sentencing hearing puts to rest any idea that he disbelieved the boys: "I've been involved in hundreds, if not thousands, of cases like this, unfortunately.  And this is as bad as any I've ever had because of the violation of trust that was involved here, the nature of the relationship between the defendant and these children, and how he violated that position of trust by deception.  And what he did, of course, speaks for itself."  RT 1188.  The evidence was constitutionally sufficient to support the conviction on count 12.

B.      Apprendi Claim

King contends that his sentence violated the rule from Apprendi in that an upper term sentence was imposed based on facts not found true by the jury.  He also contends that the imposition of consecutive sentences violated the Apprendi rule.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a trial by jury.  U.S. Const. amend. VI.  This right to a jury trial has been made applicable to state criminal proceedings via the Fourteenth Amendment's Due Process Clause. Duncan v. Louisiana, 391 U.S. 145, 149-50 (1968).  The Supreme Court's Sixth Amendment jurisprudence was significantly expanded by Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny, which extended a defendant's right to trial by jury to the fact finding used to make enhanced sentencing determinations as well as the actual elements of the crime.  "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Id. at 488-90 (2000).  In Cunningham v. California, 549 U.S. 270 (2007), the Court held that California's determinate sentencing law ("DSL") – which used a sentencing triad of

11

**United States District Court**
For the Northern District of California

lower/middle/upper terms – violated the Sixth Amendment because it allowed the sentencing court to impose an upper term sentence based on aggravating facts that it found to exist by a preponderance of the evidence.  See id. at 288-89.  Concluding that the middle term was the relevant statutory maximum, and noting that aggravating facts were found by a judge and not the jury, the Supreme Court held that California's DSL violated the rule set out in Apprendi.  Id. at 288-89, 293.

Here, King's conviction on count 1 for his lewd act with a child under the age of 14 resulted in an upper term sentence of 8 years.  This would raise an Apprendi concern but for the fact that King had waived his right to a jury trial.  King specifically chose a bench trial instead of a jury trial, and specifically agreed that "the judge would then be the trier of the fact[s], as well as the trier of the law, and there would be no jury."  RT 3.  The right to a jury trial is a right that may be waived in both state and federal courts.  See Cal. Penal Code § 1167; Fed. R. Crim. P. 23(a)(1)(a).  "[N]othing prevents a defendant from waiving his Apprendi rights."  See Blakely v. Washington, 542 U.S. 296, 310 (2004); see United States v. Milam, 443 F.3d 382, 387 (4th Cir. 2006).  Although the observation in Blakely was made in a case where the defendant had pled guilty, the principle is just as applicable to King's situation where a bench trial was held after he had waived his right to a jury trial.  Having waived his right to a jury without excepting from that waiver a right to have a jury determine sentencing factors, King's claim that his upper term sentence violated Apprendi fails.

King's contention that the imposition of consecutive sentences also violated the Apprendi rule is foreclosed by the recent decision in Oregon v. Ice, 129 S. Ct. 711 (2009), in which the Court held that the Sixth Amendment does not require juries to make findings of fact regarding the imposition of consecutive rather than concurrent sentences,  and that states may allow judges to make those findings of fact.  Under Ice, a trial judge may impose consecutive sentences based on findings made by the judge without running afoul of the Apprendi line of cases.  That is just what was done here.  The consecutive sentences did not violate King's rights under Apprendi.

12

**CONCLUSION**

For the foregoing reasons, the petition for writ of habeas corpus is DENIED.  The clerk shall close the file.

IT IS SO ORDERED.

DATED: February 25, 2009

_____
SUSAN ILLSTON
United States District Judge